**Rosaura HERRERA, Appellant,**

v.

**WEMBLEY INVESTMENT COMPANY, Appellee.**

**No. 05–96–00446–CV.**

Court of Appeals of Texas, Dallas.

Oct. 19, 1998.

Henry Stollenwerck, Dallas, for Appellant.

Randy A. Nelson, Wade Caven Crosnoe, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for Appellee.

Before Justices LAGARDE, MALONEY, and WRIGHT.

## OPINION ON REHEARING

Opinion By Justice WRIGHT.

This Court's opinion of August 28, 1998 is withdrawn. The following is now the opinion of the Court.

Rosaura Herrera appeals the summary judgment setting aside the default judgment against Wembley Investment Company. In six points of error, appellant contends generally that the trial court erred by granting summary judgment for appellee because appellee failed to prove, as a matter of law, that it (1) was entitled to an equitable bill of review, and (2) had no liability to appellant in the underlying cause of action. We reverse the trial court's summary judgment.

### Factual and Procedural Background

Appellant worked for International Telecharge, Inc. (ITI). As she was leaving work, she slipped and fell in the hallway, injuring her back. At the time of the accident, appellee owned the building where appellant fell. The building was managed by Vantage Management Property (Vantage). Appellant sued appellee and Vantage, among others, claiming that their negligence and gross negligence resulted in her injuries.[1] Hartford Accident and Indemnity Company, the worker's compensation carrier for ITI, intervened. Hartford asserted subrogation claims seeking reimbursement for medical pay-

---

1. Appellant sued (1) Wembley Investment Company, (2) Etheridge Building Service, Inc., (3) Rallye, Inc., (4) Mary Kay Cosmetics, Inc., (5) Vantage Management Company, (6) Albert H. Halff & Associates, Inc., (7) Naohisa Yamamoto, (8) Ameplaza, and (9) John Doe No. 1.

ments paid for and worker's compensation benefits paid to appellant.

Appellee and Vantage were wholly-owned subsidiaries of Vantage Companies. Both appellee and Vantage were insured under a liability policy issued by American & Foreign Insurance Company, a member of the Royal Insurance Group (Royal).

Appellant served appellee's registered agent, C.T. Corporation System, on December 11, 1991. C.T. forwarded the citation to Vantage Companies. In turn, Vantage Companies forwarded notice of the lawsuit against Vantage and appellee to Royal. Apparently, Royal received notice of the lawsuit against Vantage before it received notice of the suit against appellee.

When Royal received the citation and petition against Vantage, Royal directed a law firm, Thompson & Knight, to answer the lawsuit. Later, on December 27, 1991, Neal Akins, a claims supervisor for Royal, received the citation and petition against appellee. Akins determined, either through reviewing computer information or the claim file, that Royal already had an open file for the case and that Thompson & Knight had been directed to answer the lawsuit. According to Akins, he did not realize that the citation and petition received on December 27, 1991; were separate from the citation and petition against Vantage, which Royal had already directed Thompson & Knight to answer. As a result, Akins attached a note stating "Answer is already ordered Thompson & Knight." Akins then forwarded the citation and petition to Gary Freeman, the claims representative assigned to handle appellant's lawsuit.

Likewise, Freeman did not realize the citation was directed to appellee rather than Vantage. Not realizing the citation

that Akins sent to him was directed to appellee, he did not check to see whether appellee was an insured. Nor was he aware from previous dealings with appellee that it was a subsidiary of the Vantage Companies, and thus an insured. As a result, Freeman did not direct Thompson & Knight or any other law firm to answer for appellee and appellee never answered the lawsuit.

In August 1992, Vantage filed a motion for summary judgment. In the motion, Vantage claimed that under the terms of the commercial lease between appellant's employer, ITI, and Vantage, as agent for appellee, ITI had possession and control of the premises. According to Vantage, ITI had sole responsibility for maintenance and repair of the premises at the time of appellant's accident and Vantage had no liability for an injury caused by a premises condition. The trial court granted Vantage's motion for summary judgment on November 25, 1992.

A little more than a year later, on December 13, 1993, the trial court signed a judgment reflecting that three defendants, Mary Kay Cosmetics, Inc., Vantage, and Albert H. Halff & Associates had either previously been dismissed or granted a take-nothing judgment. The December 13, 1993 judgment rendered a default judgment for appellant and Hartford against appellee, Etheridge Building Service, Inc., and Rallye Inc. for $1,259,314.32.[2] The judgment did not expressly address Hartford's subrogation claims against Mary Kay, Vantage, or Halff.

Appellant's counsel did not certify to the trial court clerk the last known mailing address for appellee until December 15, 1993. The record does not reflect that the clerk mailed written notice of the default judgment to appellee. P. Jefferson Bal-

---

**2.** The judgment recites that the trial court, "after tak[ing] testimony, is of the opinion that the plaintiff ought to recover from Wembley Investment Company, Etheridge Building Service, Inc., [and] Rallye Inc." The judgment then orders plaintiff and Hartford to recover from Wembley Investment Compa-

ny, Etheridge Building Service, Inc., Rallye, Inc, Naohisa Yamamoto, Ameplaza, and John Doe, the sum of $1,259,314.32. On December 20, 1993, the trial court granted appellant's motion to nonsuit Yamamoto, Ameplaza, and John Doe.

lew, counsel for Vantage, learned of the default judgment against appellee in March 1994. However, at that time he did not realize that appellee was an insured of Royal. It was not until August 23, 1994, that Ballew was told that Vantage and appellee had coverage under the same insurance policy.

Likewise, Freeman, the Royal claims representative assigned to the case, did not recognize that Vantage and appellee had coverage under the same policy. Freeman received a copy of the judgment entered against appellee in March 1994. At that time, Freeman was unaware that appellee was one of the subsidiaries of Vantage Companies, and thus an insured of Royal.

On August 18, 1994, appellant's counsel called the office of John Eulich, Chairman of the Board of Directors for appellee and left a message for Eulich concerning the judgment. On August 23, 1994, Royal learned of the default judgment against appellee and retained an attorney to overturn the judgment. In October 1994, appellee filed both a motion for new trial and a petition for bill of review.

Several months later, Hartford filed a motion to nonsuit its claims against Mary Kay Cosmetics, Inc., Vantage Management Inc., Albert H. Halff & Associates, Inc., Naohisa Yamamoto, Ameplaza, and John Doe, that the trial court granted on January 20, 1995. Neither appellee nor Vantage was served with a copy of the motion or the order granting the nonsuit. The trial court did not send notice of the order to appellee. Appellee was not notified of the nonsuit until September 20, 1995, at the hearing on appellee's October 1994 motion for new trial.

Following the September 20, 1995 hearing, the trial court denied appellee's motion for new trial. Appellee then filed a motion for summary judgment in the bill of review proceeding. In the motion, appellee contended it did not receive notice of the final judgment by the trial court clerk and that it had shown, as a matter of

law, its right to challenge the default judgment. Appellee argued that it did not receive timely notice of either the December 13, 1993 default judgment or the January 20, 1995 nonsuit order. According to appellee, it is entitled to a bill of review proceeding regardless of which is the final judgment. Appellee also argued that it was entitled to a take-nothing judgment on appellant's claims because, as a matter of law, it could have no liability to appellant under the lease agreement with ITI. Appellee maintained that although it owned the building where appellant was injured, Vantage, as leasing agent for appellee, leased the premises to ITI. Therefore, according to appellee, it was entitled to summary judgment for the same reasons summary judgment was granted for Vantage.

Appellant responded, claiming that appellee was not entitled to challenge the default judgment in the bill of review proceeding because (1) the summary-judgment evidence establishes that appellee did not pursue its legal remedies; or alternatively (2) there are fact issues about whether appellee (i) pursued its legal remedies, and (ii) was at fault, negligent, or free of conscious indifference.

After considering the summary-judgment evidence, the trial court granted appellee's motion for summary judgment and set aside the default judgment. This appeal followed.

## Standard of Review

█ The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (Tex.1952). In reviewing a summary-judgment record, this Court applies the following well-known standards:

 1. The movant for summary judgment has the burden of showing that there is

no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

When, as here, the plaintiff moves for summary judgment the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Nationwide Property & Casualty Ins. Co. v. McFarland,* 887 S.W.2d 487, 490 (Tex.App.—Dallas 1994, writ denied); *see* Tex.R.Civ.P. 166a(c). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). Once the plaintiff establishes its right to summary judgment as a matter of law, the burden then shifts to the defendant as non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.,* 884 S.W.2d 825, 828 (Tex.App.—Dallas 1994, writ denied). The question on appeal is whether the summary-judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

### Final Judgment

At the outset, we must determine the date of the final judgment in the underlying lawsuit. Appellant maintains that the December 13, 1993 judgment is the final judgment. According to appellant, the December 13, 1993 judgment is final because

(1) it was not necessary for the judgment to dispose of Yamamoto, Ameplaza, and Doe because they were never served and did not appear, and (2) the judgment necessarily disposes of Hartford's claims against Mary Kay, Vantage, and Halff because Hartford's subrogation claims are derivative of her claims. Appellee maintains that the December 13, 1993 default judgment is interlocutory and became final on January 20, 1995 when Hartford nonsuited its subrogation claims against Mary Kay, Vantage, Halff, Yamamoto, Ameplaza, and John Doe.

 A final judgment is one that disposes of all legal issues between all parties in a case. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Issues and parties may be disposed of expressly or by necessary implication. *See North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). In contrast to a judgment entered following a trial on the merits, a default judgment carries no presumption of finality. *See Houston Health Clubs, Inc. v. First Court of Appeals,* 722 S.W.2d 692, 693 (Tex.1986). We determine the finality of a judgment based upon the intent of the trial court as gleaned from the language of the decree, the record as a whole, and the conduct of the parties. *See Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 277 (Tex. 1996).

On December 5, 1991, appellant filed her original petition, naming appellee, Etheridge Building Service, Inc., Rallye, Inc., Mary Kay Cosmetics, Inc., Vantage Management Company, Albert H. Halff & Associates, Inc., Naohisa Yamamoto, Ameplaza, and John Doe No. 1 as defendants. On July 29, 1992, the trial court signed an order granting appellant's motion to nonsuit Albert H. Halff & Associates, Inc. On September 4, 1992, the trial court granted Mary Kay's motion for summary judgment and signed a partial summary judgment ordering appellant take nothing from Mary Kay. On October 9, 1992, Hartford filed

its amended plea in intervention, asserting subrogation rights against the defendants "set forth in Plaintiff's Original Petition." On November 25, 1992, the trial court granted Vantage's motion for summary judgment, ordering appellant take nothing from Vantage. On December 13, 1993, the trial court signed a default judgment for appellant and Hartford against appellee, Etheridge Building Service, Inc., and Rallye Inc. for $1,259,314.32. The judgment does not expressly dispose of Hartford's subrogation claims against Mary Kay, Halff, or Vantage. According to appellant, however, because these claims are derivative of her claims, they were necessarily disposed of with the previous take-nothing judgments and nonsuit order disposing of her claims.

■ Subrogation places one party in the place of another so that the new party gains the rights of the former party regarding a claim. *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). Thus, subrogation rights are derivative. *Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992). However, once the insurer pays part of the plaintiff's loss, it becomes a *pro tanto* owner of the cause of action. *Thoreson v. Thompson,* 431 S.W.2d 341, 347 (Tex.1968); *Cox v. Realty Dev. Corp.,* 748 S.W.2d 492, 494 (Tex. App.—Dallas 1988, no writ). Once the insurer becomes a *pro tanto* owner of the cause of action, the insurer may assert its portion of the subrogation claim against the tortfeasor even in the absence of a suit by the injured party. *See Macarangal v. Andrews,* 838 S.W.2d 632, 635 (Tex.App.— Dallas 1992, orig. proceeding, leave denied). Thus, from the point of payment forward, dismissal of the insured's part of the cause of action does not necessarily dismiss the insurer's part of the cause of action. *See id.* at 635–36; *Cox,* 748 S.W.2d

at 494 (dismissing plaintiff's claim against defendant did not dismiss insurer's subrogation claim); *In re Romero,* 956 S.W.2d 659, 661 (Tex.App.—San Antonio 1997, orig. proceeding) (plaintiff's voluntary nonsuit of her part of the cause of action against defendant did not extinguish insurer's subrogation claim by necessary implication); *but see Phennel v. Roach,* 789 S.W.2d 612, 615 (Tex.App.—Dallas 1990, writ denied) (because subrogation claim is derivative, when plaintiff's pleadings against defendant struck, insurer's cause of action against defendant also defeated).

■ Here, appellant filed a motion to nonsuit Halff. On July 29, 1992, the trial court granted appellant's motion and signed an order dismissing Halff. The order does not expressly refer to Hartford's subrogation claim. When Hartford paid appellant workers' compensation benefits and medical payments, it became a *pro tanto* owner of the cause of action and Hartford could have asserted its portion of the claim against Halff even in the absence of a suit by appellant. Thus, we conclude that dismissal of appellant's part of the claim did not necessarily act to dismiss Hartford's part of the claim against Halff at the time of the signing of the July 29, 1992 order. It was not until January 20, 1995, when the trial court granted Hartford's motion to nonsuit Halff, that it finally disposed of Hartford's subrogation claim against Halff.

The trial court's granting of Hartford's motion for nonsuit disposed of all parties and issues in the case.[3] Thus, the January 20, 1995 nonsuit order is the final, appealable judgment. *See Azbill v. Dallas County Child Protective Services,* 860 S.W.2d 133, 137 (Tex.App.—Dallas 1993, no writ) (interlocutory judgments and orders are merged into the final judgment whether the interlocutory judgments or orders are

**3.** There is no dispute that the interlocutory December 13, 1993 default judgment, together with the December 20, 1993 order nonsuiting appellant's claims against Yamamoto, Ameplaza and John Doe; the January 20, 1995 order nonsuiting Hartford's subrogation claims against Mary Kay, Vantage, Halff, Yamamoto, Ameplaza, and John Doe; and the prior interlocutory summary judgment orders dispose of all of the issues and parties.

specifically named within the final judgment); *McGrew v. Heard*, 779 S.W.2d 455, 457–58 (Tex.App.—Houston [1st Dist.] 1989, no writ) (nonsuit order disposing of remaining claims made the judgment final).

## Bill of Review

Having determined that the final judgment was signed January 20, 1995, we must next consider whether appellee showed, as a matter of law, that it was entitled to a bill of review. In point of error two, appellant contends that the trial court erred by granting summary judgment because appellee failed to prove, as a matter of law, that it was free of neglect and exercised diligence in pursuing its legal remedies following the judgment in the underlying case.[4]

A bill of review is an equitable action brought by a party to a former action seeking to set aside a judgment that is no longer appealable or subject to a motion for new trial. *State v. 1985 Chevrolet Pickup Truck*, 778 S.W.2d 463, 464 (Tex.1989). Upon the expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. TEX. R.CIV.P. 329b(f). The burden on a bill of review petitioner is heavy because the administration of justice requires that judgments be accorded some finality. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 998 (1950). Therefore, the grounds upon which bills of review are granted are narrow and restricted. *Bakali v. Bakali*, 830 S.W.2d 251, 255 (Tex.App.—Dallas 1992, no writ).

To invoke the equitable powers of the court, the traditional bill of review complainant must allege and present prima facie proof that (1) the prior judgment was rendered as the result of fraud, accident, or wrongful act of the opposite party or official mistake; (2) without any fault or negligence of his own; and (3) the existence of a meritorious defense to the cause of action alleged to support the judgment. *See Baker v. Goldsmith*, 582 S.W.2d 404, 408 (Tex.1979); *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 243 (Tex.1974); *Hagedorn*, 226 S.W.2d at 998.

However, a defendant deprived of an opportunity to file a timely motion for new trial after default judgment by the actions of or erroneous information furnished by an officer of the court in the performance of his official duties is entitled to a bill of review, under appropriate circumstances, if his failure to answer was not intentional or the result of conscious indifference, even though such failure was negligent. *See Hanks v. Rosser*, 378 S.W.2d 31, 34 (Tex.1964); *Buddy L, Inc. v. General Trailer Co.*, 672 S.W.2d 541, 544 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The clerk's failure to send the notice required by the rules of civil procedure is equivalent to misinformation by the clerk. *Petro–Chemical*, 514 S.W.2d at 244; *Buddy L, Inc.*, 672 S.W.2d at 545.[5] *Hanks* does not, however, relieve the defendant of the responsibility to pursue due diligence in pursuing its legal remedies. *See Petro–Chemical*, 514 S.W.2d at 246; *Nichols v. Jack Eckerd Corp.*, 908 S.W.2d 5, 9 (Tex. App.—Houston [1st Dist.] 1995, no writ).

The fact that an injustice occurred alone is not sufficient to justify relief by bill of review. *Hagedorn*, 226 S.W.2d at 998. Relief by bill of review is available only if a party has exercised due diligence to pursue all adequate legal remedies against a former judgment, and through no fault of his own, no adequate

---

**4.** The majority of appellant's argument under point of error two relates to the December 13, 1993 judgment. Appellant does, however, present an alternative argument premised on the final judgment being the January 20, 1995 nonsuit order.

**5.** The rules of civil procedure require the trial court clerk to send notice to the parties advising them that the judgment or order was signed. *See* TEX.R.CIV.P. 306a.

remedy was available. A litigant must show good cause for failure to exhaust all adequate legal remedies. *Tice v. City of Pasadena,* 767 S.W.2d 700, 702 (Tex.1989). An "adequate remedy" means a remedy that is plain and complete and as practical and efficient to the ends of justice and its prompt administration as a remedy in equity. *Blum v. Mott,* 664 S.W.2d 741, 743–44 (Tex.App.—Houston [1st Dist.] 1983, no writ). Generally, legal remedies include a motion for new trial, direct appeal, or writ of error. *See Hesser v. Hesser,* 842 S.W.2d 759, 765 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Appellee based its right to a bill of review on the failure of opposing counsel to notify it of the entry of the final judgment and the clerk's failure to send the required notice. The summary judgment evidence shows that appellee learned of the default judgment against it in August 1994. Appellee filed a bill of review on October 21, 1994 and a motion for new trial on October 24, 1994.[6] On October 30, 1995, over a year later, the trial court ruled on appellee's motion for new trial and the bill of review. During the pendency of the motion for new trial, unknown to appellee, the order of nonsuit was signed, the default judgment became final, and the appellate timetable expired.

Appellee maintains that by the time it learned of the nonsuit order on September 20, 1995, the remedies of a motion for new trial, appeal, or writ of error were unavailable. We agree. Appellee fails to acknowledge, however, that it had knowledge of the default judgment, albeit interlocutory, in August 1994 and for well over a year did not obtain a ruling on its pending motion for new trial. We recognize that the default judgment was not final, however, a default judgment may be set aside even if it is interlocutory. *See*

*Houston Health Clubs,* 722 S.W.2d at 694; *Bryant v. Shields, Britton & Fraser,* 930 S.W.2d 836, 844 (Tex.App.—Dallas 1996, writ denied). Further, as appellee states in its brief, "faced with uncertainty as to the finality of the judgment" it filed both a bill of review and a motion for new trial. If it believed it was necessary to file a motion for new trial, it was incumbent on appellee to follow-up on the motion. Lack of knowledge regarding the nonsuit order did not prevent appellee from diligently pursuing the relief requested in its pending motion for new trial.[7] In his affidavit, Nelson explains that he did not obtain a ruling on the motion for new trial due to "circumstances beyond his control." According to Nelson, the hearing was delayed because of rescheduling by the court and by postponement requests by appellant's counsel. The record does not show if appellee opposed the postponement requests nor does it show what inquiries appellee made regarding the status of the motion for new trial or the need for a hearing on the motion. Thus, although the summary judgment evidence shows why the hearing was delayed, it does not show what actions, if any, appellee took to have the default judgment set aside.

As movant for summary judgment, it was appellee's burden to show, as a matter of law, that it diligently pursued all available legal remedies. *See* TEX.R.CIV.P. 166a(c); *Tice,* 767 S.W.2d at 702. We recognize that, generally, available legal remedies include actions taken after the default judgment becomes final. However, it is also the general rule that a party brings a bill of review to set aside the default judgment because it did not learn of the default judgment until after the judgment has become final. We cannot conclude that failure to notify appellee of

---

6. Our record does not contain the motion for new trial. Randy A. Nelson, the attorney representing appellee, testified in his affidavit that he filed the motion for new trial on October 24, 1994.

7. It appears from the record that the trial court eventually denied the motion for new trial because it believed the appropriate remedy at that point in time was to set the trial for a hearing on the bill of review.

the nonsuit order necessarily vitiated the need for appellee, who had actual notice of the default judgment before the nonsuit order, to be diligent in pursuing the legal remedies available to him at the time notice of the default judgment was received. Considering the unusual facts and procedural history of this case, and bearing in mind the heavy burden placed on a petitioner for a bill of review, we cannot conclude that appellee showed, *as a matter of law*, that it diligently pursued all available legal remedies. We conclude, under the limited facts and circumstances of this case, that a fact issue exists about whether appellee had a remedy available to it that was as "plain and complete and as practical and efficient" as a remedy in equity. *See Blum*, 664 S.W.2d at 743–44. Consequently, we conclude appellee failed to meet its summary judgment burden to show that it was entitled to a bill of review. We sustain point of error two. Due to our disposition of point of error two, we need not address appellant's remaining points of error.

Accordingly, we reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion.