WEMBLEY INVESTMENT
COMPANY, Petitioner,

v.

Rosaura HERRERA, Respondent.

No. 98–1161.

Supreme Court of Texas.

Dec. 2, 1999.

Wayde Caven Crosnoe, Randy A. Nelson, Dallas, for Petitioner.

Henry Stollenwerck, Dallas, for Respondent.

PER CURIAM.

Wembley Investment Company seeks to set aside a default judgment by bill of review. The trial court granted Wembley summary judgment on the bill of review, but the court of appeals reversed, holding that Wembley failed to prove as a matter of law that it was diligent in pursuing a ruling on its motion for new trial while the default judgment remained interlocutory. 12 S.W.3d 83. We hold that, because Wembley timely filed its motion for new trial and, by the accidents or wrongful acts of others, was unaware that the default judgment had become final, the court of appeals erred in reversing the summary judgment on this basis. Accordingly, we reverse and remand to the court of appeals for further proceedings.

Rosaura Herrera was leaving work when she slipped and fell in the hallway, injuring her back. Wembley owned, and Vantage Management Company managed, the building in which the incident occurred. Herrera sued Wembley and Vantage, claiming that their negligence and gross negligence caused her injuries. She also sued (1) Etheridge Building Service, Inc., (2) Rallye, Inc., (3) Mary Kay Cosmetics, Inc., (4) Albert H. Halff & Associates, Inc., (5) Naohisa Yamamoto, (6) Ameplaza, and (7) John Doe No. 1. Hartford Accident and Indemnity Company, the workers' compensation carrier for Herrera's employer, intervened and asserted subrogation claims for benefits paid to Herrera.

When the incident occurred, Wembley and Vantage were wholly-owned subsidiaries of Vantage Companies, and both were insured under a liability policy issued by American & Foreign Insurance Company, a member of the Royal Insurance Group. Through some confusion on Royal's part, Herrera's suit against Vantage was referred to counsel for a response, but Herrera's suit against Wembley was not. Consequently, no answer was filed on Wembley's behalf.

Vantage moved for summary judgment on the grounds that (1) a lessor's liability for a dangerous premises condition ends when the property is transferred to the lessee, (2) the lease with Herrera's employer expressly provided that the lessee would maintain the premises, and (3) the lease expressly absolved the lessors from liability for premises defects. The trial court granted Vantage's motion and entered a take-nothing judgment in its favor.

A little over a year later, on December 13, 1993, the trial court granted a default judgment against Wembley and others. The judgment recites that Herrera's claims against three defendants—Mary Kay Cosmetics, Vantage, and Halff—were previously resolved by dismissal or take-nothing judgments, but the judgment does not address Hartford's subrogation claims against these three defendants. The judgment awards Herrera a default judgment against Wembley and five remaining defendants in the amount of $1,259,314.32. Hartford is also awarded judgment against these defendants to the extent of its subrogated interest.[1]

The record does not reflect that the clerk mailed notice of the default judgment to Wembley, and Herrera concedes that the clerk apparently did not do so. Wembley first learned of the default judgment on August 18, 1994, when Herrera's counsel contacted Wembley's chairman. Only then, Wembley claims, did Royal learn that Wembley was its insured. Royal retained counsel to overturn the default judgment against Wembley. Uncertain about the default judgment's finality absent an express disposition of Hartford's subrogation claims, Wembley's counsel filed both a motion for new trial and a petition for bill of review. Discovery proceeded, and the motion for new trial was set for hearing on January 17, 1995. The

trial court reset the hearing to January 24, 1995, and later postponed it at Herrera's counsel's request.

In mid-January 1995, Herrera's counsel informed Hartford that some of its subrogation claims had not been dismissed. He requested Hartford to file a motion for nonsuit and proposed judgment on these claims, which it did. The trial court granted Hartford's motion and signed the "Judgment of Nonsuit" as to all nondefaulting defendants on January 20, 1995. Although Wembley had entered an appearance, the summary judgment proof shows that it did not receive a copy of the nonsuit motion or judgment. Wembley first learned of the nonsuit on September 20, 1995, at the hearing on its motion for new trial. By that time, the trial court lacked jurisdiction to grant a motion for new trial, and Wembley could not seek relief by appeal or writ of error. The trial court denied Wembley's motion for new trial, and Wembley moved for summary judgment in the bill of review proceeding. The trial court determined that Wembley had a meritorious defense to Herrera's suit[2] and that it had established the necessary bill of review elements as a matter of law. Accordingly, the trial court granted Wembley's motion for summary judgment, set aside the December 13, 1993 default judgment, and rendered a take-nothing judgment against Herrera in the underlying case. The court of appeals reversed the summary judgment, concluding that Wembley had not proved as a matter of law that it diligently pursued relief on its motion for new trial before seeking a bill of review.

12 S.W.3d at 91. We disagree.

■■■ A bill of review is an independent action to set aside a judgment that is no longer appealable or subject to challenge

---

1. One week later, Herrera and Hartford nonsuited their claims against three of these defendants, Yamamoto, Ameplaza, and John Doe, who had not been served.

2. The trial court found that "as a matter of law Wembley Investment Co. established that it has no liability to, and could have no liability to, Rosaura Herrera as a result of the slip-and-fall accident ... which was the subject of [the underlying suit]."

by a motion for new trial. *See Caldwell v. Barnes,* 975 S.W.2d 535, 537 (Tex.1998). Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review. *See Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 998 (1950). Generally, bill of review relief is available only if a party has exercised due diligence in pursuing all adequate legal remedies against a former judgment and, through no fault of its own, has been prevented from making a meritorious claim or defense by the fraud, accident, or wrongful act of the opposing party. *See Tice v. City of Pasadena,* 767 S.W.2d 700, 702 (Tex.1989); *Petro–Chemical. Transp., Inc. v. Carroll,* 514 S.W.2d 240, 243 (Tex.1974). If legal remedies were available but ignored, relief by equitable bill of review is unavailable. *See Caldwell,* 975 S.W.2d at 537.

■ The court of appeals held that the default judgment was interlocutory when Wembley learned of its existence in August 1994.[3] 12 S.W.3d at 91. The court further held that, even though Wembley did not know that the default judgment had become final, Wembley could have obtained relief by obtaining a ruling on its motion for new trial while the default judgment remained interlocutory. 12 S.W.3d at 91. The court concluded this constituted some evidence that Wembley did not exercise due diligence in pursuing available legal remedies, and that Wembley was therefore not entitled to summary judgment. 12 S.W.3d at 92. We do not agree, however, that Wembley's failure to obtain a ruling on its motion while the default judgment remained interlocutory, without more, is evidence that it lacked due diligence.

■ A party who fails to timely avail itself of available legal remedies is not entitled to relief by bill of review. *Caldwell,* 975 S.W.2d at 537. But here, it is undisputed that Wembley timely availed itself of a legal remedy by filing a motion for new trial in October 1994. It did so even though the time in which Wembley was required to file the motion did not begin to run until the judgment was final on January 20, 1995. *See* Tex.R. Civ. P. 329b. Wembley's summary judgment proof established that it was never served with a copy of the nonsuit motion or order. Although the certificate of service in Hartford's nonsuit motion created a presumption that it was received, that presumption is "not 'evidence' and it vanishes when opposing evidence is introduced that the [document] was not received." *Cliff v. Huggins,* 724 S.W.2d 778, 780 (Tex.1987). Wembley's counsel provided affidavits averring that they never received the nonsuit motion or judgment, thereby overcoming any presumption of receipt created by the certificate of service.

■ Herrera attempted to controvert Wembley's attorneys' affidavits with affidavits from Linda Jenkins, Hartford's attorney, and an individual named Grace Upchurch. However, neither of those affidavits was sufficient to controvert Wembley's summary judgment proof. Jenkins initially signed an affidavit quoting the nonsuit motion's certificate of service and attesting that the motion "was mailed," but she later provided a more detailed affidavit stating she did not follow her usual practice in connection with service of the motion, she had no personal knowledge that the motion and judgment were, in fact, mailed to the attorneys, and "it is possible because of the rush that they were not mailed." Thus, Jenkins' affidavit is no evidence that Wembley was served with notice of the nonsuit motion.

■ Neither is Upchurch's affidavit sufficient to controvert Wembley's attorneys' affidavits. First, the affidavit does

---

**3.** The court of appeals held that the December 13, 1993 default judgment did not become final until January 20, 1995, when the trial court finally disposed of Hartford's subrogation claims. *See Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Neither party challenges that holding in this appeal, and we do not consider it.

not identify who she is or how she obtained her purported knowledge. Moreover, the affidavit merely recites Upchurch's belief that her office followed its routine practice of mailing copies of documents filed with the court to all counsel of record with the appropriate postage. But when the sender of a document relies on office routine or custom to support an inference that the document was mailed, the sender must provide corroborating evidence that the practice was actually carried out. *See Texas Employers Ins. Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 92 (1961); *State and County Mut. Fire Ins. Co. v. Williams,* 924 S.W.2d 746, 749 (Tex.App.—Texarkana 1996, no writ); *Pan American Bank v. Nowland,* 650 S.W.2d 879, 884 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.), *overruled on other grounds, Crimmins v. Lowry,* 691 S.W.2d 582 (Tex.1985). Herrera provided no such evidence. At best, Upchurch's affidavit is only an "opinion[ ] that the notice w[as] *probably* sent," and does not controvert Wembley's attorneys' affidavits attesting that the nonsuit motion was not received. *Williams,* 924 S.W.2d at 749 (emphasis added).

Because Wembley was not served with the nonsuit motion or judgment, it had no reason to believe that the default judgment was about to become final. Wembley's ignorance of the January 20, 1995 nonsuit motion and dismissal order prevented it from pursuing otherwise available remedies and necessitated proceeding by bill of review, not its failure to advance a motion at some point in time earlier than that allowed by law.

In an analogous context, we held that, as long as the bill of review was filed within the statutory time period, the plaintiff's nearly two-year delay in bringing it after learning of the default judgment did not bar relief absent some element of estoppel or extraordinary circumstance that would render the bill's enforcement inequitable. *See Caldwell,* 975 S.W.2d at 538. We noted that the bill of review plaintiff offered an adequate explanation for his delay in pursuing relief by bill of review. *See id.*

Here, Wembley was unaware that the default judgment had become final as a result of the nonsuit and that the appellate timetable was running against it. Our rules of procedure impose no obligation upon a litigant to obtain a ruling on a motion for new trial before the judgment becomes final. And Herrera has not asserted estoppel or other extenuating circumstances that might otherwise render relief by bill of review inequitable. Under these circumstances, Wembley's failure to obtain a ruling on its motion for new trial resulted from the accidents or wrongful acts of others and not from lack of due diligence.

For the reasons stated, the court of appeals erred in holding that Wembley had an obligation to advance its motion for new trial sooner than the time allowed by law. Accordingly, without hearing oral argument, we grant Wembley's petition for review, reverse the court of appeals' judgment, and remand the case to that court to allow it to consider Herrera's remaining points. *See* Tex R. App P. 59.1.