

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00080-CV
_____

JANE ANN WALKER ALVIZO, Appellant

V.

ANDY WALKER, Appellee

_____

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. CV-2020-7713

_____

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

O P I N I O N

In 2018, Andy Walker obtained a declaratory judgment (the 2018 Judgment) against his sister, Jane Anne Walker Alvizo, dividing several tracts of real property they had inherited from their parents. Among the properties divided between the parties was an approximately 51-acre tract awarded to Alvizo that shared a common boundary with an approximately 21.75-acre tract[1] awarded to Walker. A subsequent survey of the common boundary line between the two contiguous tracts in accordance with the metes and bounds description of the boundary contained in the 2018 Judgment revealed that an irrigation well, irrigation equipment, and some blueberry plants that Walker thought were located on his tract were, in fact, located on Alvizo's tract. Since the time to appeal the 2018 Judgment had expired, Walker filed this bill of review action in which he asked the trial court for a declaration that the tract awarded to him in the 2018 Judgment included the well and irrigation equipment. Walker filed a motion for summary judgment, which the trial court granted based on mutual mistake, and modified the 2018 Judgment based on an "equitable division survey" of the common boundary so that Walker's tract would include the irrigation well, irrigation equipment, and blueberry plants.

On appeal, Alvizo complains that the trial court erred in granting summary judgment because Walker did not establish, as a matter of law, (1) that he had exercised due diligence in pursuing his legal remedies, (2) a meritorious ground of appeal, (3) that he was entitled to a bill of review because of mutual mistake of the parties, and (4) that he was without negligence or

---

[1] The 2018 Judgment contained metes and bounds descriptions of both the 51-acre tract and the 21.75-acre tract.

fault. Because we find that Walker did not establish his right to a bill of review, we reverse the trial court's summary judgment and remand this cause to the trial court for further proceedings.

## I.       Background

Walker filed a motion for a traditional summary judgment and alleged that, although many of the tracts in the 2018 Judgment were hotly contested, the parties always agreed that Walker was to receive the 21.75-acre tract and its appurtenances, that Alvizo was to receive the 51-acre tract, and that they would use the metes and bounds description in a 1980 deed to identify the 21.75-acre tract. Walker also alleged that it was intended by the parties that the discrepancy between the acreage was to be made up by the presence of improvements and appurtenances on the smaller tract and that the parties presumed that the 21.75-acre tract included the family blueberry patch, a well, and accompanying irrigation equipment. Walker also alleged that, when the 21.75-acre tract was surveyed following the metes and bounds description contained in the 2018 Judgment, it contained less than 21.75 acres, and part of the irrigation equipment, the blueberry patch, and the related irrigation well were "cut off." Consequently, he alleged, the reliance on the metes and bounds description in the 1980 deed was a mutual mistake because it did not include these cut off improvements.

In support of his allegations, Walker provided the following summary judgment evidence:

1.       A copy of the 2018 Judgment containing descriptions of the 51-acre tract[2] awarded to Alvizo and the 21.75-acre tract[3] awarded to Walker.

---

[2]In the 2018 Judgment, the 51-acre tract is titled Property 1 and described as:

A 51 acre tract, more or less, being more particularly described as follows:

3

2. A copy of a warranty deed dated December 4, 1943, by and between G.P. Faires and Lillie Faires, husband and wife, grantors, to G.H. Walker, grantee, conveying

---

Being 51 acres of land out of the R.W. Lee Survey, described by metes and bounds as follows:
All that certain tract or parcel of land situated in Fannin County, Texas, and being 72.45 acres of the R.W. Lee Survey, Abstract No. 667, and the B. Olivo Survey, Abstract 855;
BEGINNING at the SE corner of said R.W. Lee Survey:
THENCE North 5 West 679.07 varas to a stake;
THENCE South 84 West 620 varas to a stake;
THENCE South 5 East 618 varas to a stake on
the North line of Lot No. 2 set apart to Mollie E. Agnew;
THENCE North 84 East 200 varas to the NW corner of said Lot No. 2:
THENCE South 5 East 61.7 varas to said Lee's SW corner;
THENCE North 84 East 420 varas to the place of beginning,
being the same land conveyed to G.P. Faires by Virginia
Nelson, by deed of record in Book 157, Page 229, Fannin
County Deed Records, and the same land described in the
deed from G.P. Faires and Lillie Faires to G.H. Walker.
dated December 4, 1943 of record in Vol. 258, Page 154.
Fannin County Deed Records

**LESS**:
All that certain tract or parcel of land situated in Fannin county, Texas, and being 21.75 acres, more or less out of the Bastian Olivo Survey, and being the same Community property purchased by Harold H. Walker and Oleta Walker from G.H. Walker and Martha Walker, in a deed dated March 28, 1980, of record in Vol. 595, Page 707, Deed Records of Fannin County, Texas.

[3]In the 2018 Judgment, the 21.75-acre tract is titled Property 4 and described as:

A 21.75 acre tract, more or less, referred to as the "home place", and is more particularly described as:

All that certain tract or parcel of land situated in Fannin county, Texas, and being 21.75 acres, more or less, out of the Bastian Olivo Survey, more particularly described as follows:
BEGINNING at an inside corner which beginning point is also in the East line of the B. Olivo Survey;
THENCE North 5 West with the dividing line between said Olivo Survey and the R.W. Lee Survey, 618 varas, more or less to the North line of the G.H. Walker tract acquired from G.P. Faires and wife, by deed recorded in Book 258, Page 154, Fannin County Deed Records;
THENCE South 84 West 200 varas to the Northwest corner of the G.H. Walker above referred to;
THENCE South 5 East 618 varas to the most Western Southwest corner of the G.H. Walker tract above referred to;
THENCE North 84 East 200 varas to the place of beginning, containing about 21.75 acres of land, more or less, and being all of 72.45 acre tract deeded by G.P. Faires and wife, to G.H. Walker by deed recorded in Book 258, Page 154, Fannin County Deed records that lies West of the East line of the Bastian Olivo Survey, and being all of said tract that is in sad Olivo Survey, and being the same land described in a Deed from G.H. Walker and Martha Walker to Harold H. and Oleta Walker dated March 28, 1980, recorded in Volume 595, Page 707, Land Records of Fannin County, Texas.

a 72.45-acre tract of land out of the R.W. Lee Survey and the B. Olivo Survey, described by metes and bounds (the 1943 Deed).

3. A copy of the Last Will and Testament of Harold Hobert Walker (Harold's Will),[4] providing that his wife, Oleta, would inherit a life estate in three listed tracts of land that Harold inherited from George Walker as his separate property, including a tract identified as "approximately 45 acres,"[5] that Alvizo would inherit the "45 acres" in fee simple, subject to Oleta's life estate, and that Walker would inherit Harold's interest in a community property tract identified as "approximately 27 acres,"[6] "including the house thereon, the contents of the house, . . . outbuildings thereon, all farm equipment, tools, and junk . . . in fee simple."

4. A copy of the Oleta M. Walker revocable living trust agreement dated July 3, 2007 (Oleta's Trust Agreement), that provided in a "Special Directive" attached thereto that Walker was to receive

> the 21.75 acre tract that contains the house, equipment and one irrigation well, along with a 25 foot wide strip of land off the South side and a Southern part of the West side of the 51 acre tract, allowing access from the 21.75 acre tract to the Curry tract. This land is known as the home place and is located in the Bastian Oliver Survey Abstract Number 855.

She also directed that Alvizo "shall receive the remainder of the 51 acre tract and one irrigation well. This land is located in the Roswell W. Lee Survey Abstract Number 667."

5. A copy of a warranty deed dated March 28, 1980, by and between G.H. Walker and Martha Walker, husband and wife, grantors, and Harold H. Walker and Oleta Walker, husband and wife, conveying 21.75 acres, more or less, and containing a metes and bounds description identical to the description of the 21.75-acre tract contained in the 2018 Judgment (the Homeplace Deed).

---

[4]Although this will was the joint will of Harold and Oleta, it is uncontested that Harold was the first to die and that the will was probated as Harold's last will and testament.

[5]It is uncontested that the "45 acres" referred to the 51-acre tract awarded to Alvizo.

[6]It is uncontested that the "approximately 27 acres" referred to the 21.75-acre tract awarded to Walker.

6.     A copy of an order entered in cause number CV-2016-7416, in the County Court at Law of Fannin County.[7]

7.     The affidavit of Andy Walker.[8]

8.     A copy of an unsigned and undated distribution deed by and between Alvizo and Walker, grantors, to Walker, grantee, with an altered metes and bounds description of the 21.75-acre tract and accompanying survey performed by Underwood Drafting and Surveying, Inc.

Alvizo filed a response.[9]  In support of her response, she filed the affidavit of Jane

Alvizo,[10] with the following attached and incorporated exhibits:

---

[7]In an appeal of this order, we have previously held that it was void for want of jurisdiction.  Other than this order and the 2018 Judgment, Walker did not file any documents or transcripts from the prior proceeding.

[8]In his affidavit, Walker states that it was never contested in the prior declaratory judgment action that Walker was to receive the approximately 21.75-acre tract, that this tract was to include the house, a blueberry patch, accompanying irrigation equipment, and a well, and that the 51 acres was to go to Alvizo.  He also states that this was consistent with his parent's estate plans and that the discrepancy in acreage was intended to be made up by the improvements on the 21.75-acre tract.  In support of these contentions, he quotes the statements concerning the 21.75-acre tract contained in Harold's Will and Oleta's Trust Agreement quoted above.  Walker then states:

> I had long believed and operated under the assumption that the acreage my parents had surveyed in 1980, assumed as being 21.75 acres, was correct and contained the described equipment, wells, and other appurtenances consistent with my parents' estate planning bequests.  This reliance was the basis of agreeing to the division as described in the [2018 Judgment].
>
> . . . In describing the parcels for purposes of the final judgment, the description used was from a 1980 deed where my parents had the 21.75 section deeded out from a larger 72.45 acre tract.  Myself, my family, my parents, and all others who were associated with these properties relied upon the original description as being accurate to encompass sufficient acreage to the included appurtenances that were associated with this tract to effectuate the intended estate planning bequests.
>
> . . . I relied upon that mistaken assumption in bargaining for the divisions in this and the underlying suit, and only learned it was incorrect when the property was re-surveyed pursuant to the final order in the original case, after the period for a judgment modification and appeals had run.  I would not have agreed to a division that did not include the intended appurtenances, and the use of the mistaken metes and bounds description does include the intended appurtenances.
>
> . . . I had to bring this bill of review as there was no other legal remedy to provide a solution to this problem, and incur additional attorney's fees as a result.

6

1.      A copy of the 1943 Deed.

2.      A copy of Harold's Will.

3.      A copy of an order admitting Harold's Will to probate dated April 21, 1999.

4.      A copy of the inventory and appraisement of the estate of Harold Walker showing that at the time of his death, Harold owned, *inter alia*, an undivided one-half community interest in a homestead dwelling and the 21.75-acre tract, and a separate property interest in three tracts of land, including the 51-acre tract (the Inventory).[11]

5.      A copy of Walker's original petition filed in the declaratory judgment action, with attached exhibits.

6.      A copy of the Homeplace Deed.

---

[9]Although Alvizo filed special exceptions to Walker's petition, she did not obtain a ruling on the special exceptions. In addition, Alvizo did not file a counter motion for summary judgment.

[10]In her affidavit, Alvizo stated that she inherited the 51-acre tract from her father, that the 21.75-acre tract was inherited by Walker, that each tract had a metes and bounds description, and that they share a common boundary. She also stated that, in Walker's petition filed in the declaratory judgment suit, he acknowledged that the 51-acre tract is Alvizo's separate property and that the petition contains the metes and bounds descriptions of the 51-acre tract and the 21.75-acre tract. Alvizo also stated that both parties agreed in the declaratory judgment suit that she received the 51-acre tract by her father's will and that Walker received the 21.75-acre tract, that this agreement was incorporated into the 2018 Judgment, and that the judgment became final without appeal.

Alvizo also stated that subsequent to the 2018 Judgment, a surveyor was contacted, and his survey contained a "cut out boundary," which was not contained in the metes and bounds descriptions of the tracts contained in the 2018 Judgment. She also stated, "There was absolutely no mistake regarding the boundary line and the well." Alvizo stated that after her father's death, her mother attempted to make some modifications to the property disposition but that Walker acknowledged in the declaratory judgment suit that their mother could not make the fee simple disposition to him since she only owned a life estate. Alvizo also stated:

My intent at all times was for me to receive the 51-acre tract exactly as described in the [2018 Judgment]. I never indicated there was even a thought I would accept anything less or change the boundary line described not only in the judgment but the previous deeds and inventory of my father. It is clear that I inherited the 51-acre tract described and this was confirmed by the 2018 judgment.

[11]The inventory set forth metes and bounds descriptions of the 21.75-acre tract and the 51-acre tract identical to the descriptions of those tracts contained in the 2018 Judgment.

7

In addition, Alvizo attached a copy of a letter brief filed by Walker in the prior proceeding. The trial court granted Walker's motion for summary judgment based on the mutual mistake of the parties in reliance on the 1980 survey.

## II. Standard of Review

"The grant of a trial court's summary judgment is subject to de novo review by appellate courts." *Brown v. CitiMortgage, Inc.*, No. 06-14-00105-CV, 2015 WL 2437519, at *2 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). We may only affirm a summary judgment on grounds that the movant preserved for review. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). Thus, "[a] motion must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

"To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *Brown*, 2015 WL 2437519, at *2 (citing TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). "Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present

evidence raising a genuine issue of material fact." *Id.* (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)).

### III.    Bill of Review

A bill of review is an independent equitable proceeding to set aside a judgment in a prior suit that is no longer appealable or subject to a motion for new trial. *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979). Relief by a bill of review "is available only if a party has exercised due diligence in pursuing all adequate legal remedies against a former judgment and, through no fault of its own, has been prevented from making a meritorious claim or defense by the fraud, accident, or wrongful act of the opposing party." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam) (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989); *Petro-Chem. Transp., Inc. v. Carroll*, 514 S.W.2d 240, 243 (Tex. 1974)). "If legal remedies were available but ignored, relief by equitable bill of review is unavailable." *Id.* (citing *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998)).

In a case such as this, where the party fully participated in the prior suit, to obtain relief by bill of review, the party is generally "required to allege and prove" "(1) a failure to file a motion for new trial" or to appeal the prior judgment "(2) caused by the fraud, accident, or wrongful act of the opposing party or by an official mistake" "(3) unmixed with any fault or negligence of [its] own and (4) a meritorious ground of appeal." *McDaniel v. Hale*, 893 S.W.2d 652, 663 (Tex. App.—Amarillo 1994, writ denied) (citing *Petro-Chem. Transp.*, 514 S.W.3d at 244–46). The second element may also be satisfied by showing a mutual mistake of the parties. *See Rose v. State*, 497 S.W.2d 444, 448 (Tex. 1973); *Kelley v. Ward*, 60 S.W. 311, 313 (Tex.

1901); *Morris v. Leonard*, 457 S.W.2d 653, 655 (Tex. App.—Fort Worth, 1970, writ ref'd n.r.e.). The mistake must be the mutual mistake of the parties related to matters of fact or a mistake of the petitioner coupled with an act of the opposing party that brought it about. *Morris*, 457 S.W.2d at 655. The unilateral mistake of the party seeking relief or its attorney will not justify relief by bill of review. *Kelly v. Wright*, 188 S.W.2d 983, 986 (Tex. 1945). Regarding the third element, the petitioner is "charged with knowledge of all facts which could have been discovered and obtained by due diligence at the time of the former trial." *Morris*, 457 S.W.2d at 655; *see Petro-Chem. Transp., Inc. v. Carroll*, 514 S.W.2d 240, 246 (Tex. 1974) ("a court of equity will not set aside a final judgment in a former action when the failure to have a full and fair presentation of the case therein resulted from the negligence, inadvertence or mistake either of the party seeking relief or his counsel") (quoting *Kelly*, 188 S.W.2d at 983).

## IV.    Analysis

### A.    Mutual Mistake Has Not Been Established

"Mutual mistake . . . requires evidence showing both parties were acting under the same misunderstanding regarding the same material fact." *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 779 (Tex. 2017). Further, "[u]nilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Trahan v. Mettlen*, 428 S.W.3d 905, 908 (Tex. App.—Texarkana 2014, no pet.) (quoting *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988)). Here, Walker had (1) to conclusively establish that there was a mutual mistake that caused him to fail to file a motion for new trial or to appeal the prior judgment and (2) to show that he had a meritorious ground for appeal.

10

As to mutual mistake, the issue in this case is whether the evidence establishes as a matter of law that, when the parties entered into their agreement to divide the 21.75-acre tract and the 51-acre tract as set forth in the 2018 Judgment, both parties were under the misapprehension that the description of the 21.75-acre tract contained in that judgment would encompass the blueberry patch, the well, and the irrigation equipment. Walker contends that neither party knew that a survey done according to the Homeplace Deed (which was identical to the description in the 2018 Judgment) would place the blueberry patch, the well, and the irrigation equipment in the 51-acre tract. He argues that the parties' agreement was based on their parents' estate plans, which he claims show that the blueberry patch, the well, and the irrigation equipment were included in the 21.75-acre tract. Alvizo argues that the summary judgment evidence showed, at best, that Walker's understanding of what was included in the 21.75-acre tract was a result of his unilateral mistake. We agree that mutual mistake has not been shown as a matter of law.

In his affidavit, Walker stated that *he* had long believed that the 21.75-acre tract as described in the Homeplace Deed included the well and irrigation equipment and that *he* relied on that assumption in bargaining for the division of the property. He did not state, however, that this was Alvizo's understanding, nor did he assert in his affidavit that Alvizo knew of his mistaken belief. Walker also stated, "Myself, my family, my parents, and all others who were associated with these properties relied upon the original description as being accurate to encompass sufficient acreage to the included appurtenances that were associated with this tract to effectuate the intended estate planning bequests." That said, he did not state any facts in his

11

affidavit that support this conclusory statement. However, "[a] conclusory statement, whether by a lay or expert witness, is not evidence." *Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.) (quoting *In re Jones*, 974 S.W.2d 766, 769 (Tex. App.—San Antonio 1998, orig. proceeding), *disapproved on other grounds by In re Lynd Co.*, 195 S.W.3d 682 (Tex. 2006) (orig. proceeding) (citing *Cas. Underwriters v. Rhone*, 132 S.W.2d 97, 99 (Tex. [Comm'n App.] 1939)). Without more, Walker's affidavit only evidences a unilateral mistake on his part.[12]

Walker argues that the parties' understanding and agreement wase based on their parents' estate plan. In support of his contention that his parents' estate plan showed their intent that the well, irrigation equipment, and blueberry patch should be included in the 21.75-acre tract, Walker points to certain language in Harold's Will and Oleta's Trust Agreement. Harold's Will provided that Walker would inherit Harold's interest in a community property tract identified as "approximately 27 acres," "including the house thereon, the contents of the house, . . . outbuildings thereon, all farm equipment, tools, and junk . . . in fee simple." The will made no mention of a blueberry patch, well, or irrigation equipment. Although Harold's Will might raise a fact issue regarding whether Walker was entitled to any irrigation equipment[13] that was not affixed to the 51-acre tract, it does not support a conclusion that Harold intended that the

---

[12]In his first amended petition for bill of review and in his motion for summary judgment, Walker alleges that the parties presumed that the 21.75-acre tract included their parents' house, the blueberry patch, the accompanying irrigation equipment, and a well. Nevertheless, even if sworn or verified, pleadings are generally not competent summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).

[13]There is no evidence in the record that the irrigation equipment at issue is the same irrigation equipment that may have existed at the time of Harold's death.

"approximately 27 acres" include a well, affixed irrigation equipment, or a blueberry patch located on the 51-acre tract.

The special directive attached to Oleta's Trust Agreement stated that the 21.75-acre tract that Walker was to receive contained "the house, equipment, and one irrigation well." However, there was no evidence that conclusively established that the equipment Oleta mentioned included any irrigation equipment affixed to the 51-acre tract, or that the irrigation well mentioned in the special directive was the well at issue in this case. To the contrary, Oleta also directed that Alvizo receive "the 51 acre tract and one irrigation well." And like Harold's Will, there is no mention of a blueberry patch.

Oleta also expressed an intent that Walker receive "a 25 foot wide strip of land off the South side and a Southern part of the West side of the 51 acre tract, allowing access from the 21.75 acre tract to the Curry tract."[14] This also does not support Walker's contention regarding his parents' estate plan. The amended survey of the 21.75-acre tract proposed by Walker and ordered by the trial court in its summary judgment provided for a 40-foot by 251-foot strip of land cut out of the western part of the original 51-acre tract, which Walker contended was sufficient to include the well, irrigation equipment, and blueberry patch. Yet, this strip of land is not located along the southern border of the 51-acre tract, but rather over 512 feet north of that border. For that reason, this language also does not support Walker's contention.

---

[14]Oleta, who received a life estate in the 51-acre tract from Harold, could not convey any interest in that tract to Walker. *See Maxwell v. Harrell*, 183 S.W.2d 577, 580 (Tex. App.—Austin 1944, writ ref'd w.o.m.) (noting that a life tenant cannot alienate property to "defeat the estate of the remaindermen").

The other summary judgment evidence submitted by Walker also does not support that there was a mutual mistake of the parties:  the 2018 Judgment set forth a metes and bounds description of the 21.75-acre tract that is identical to the metes and bounds description contained in the Homeplace Deed, and neither makes any mention of the well, irrigation equipment, or blueberry patch; the 1943 Deed set forth a metes and bounds description of the original 72.45-acre tract that was eventually divided into the 21.75-acre tract and the 51-acre tract; and the order entered in the prior proceeding after the trial court lost jurisdiction is void.

For the reasons set forth above, we find that Walker did not offer sufficient summary judgment proof to establish that both parties were acting under the same misunderstanding regarding whether the 2018 Judgment's metes and bounds description of the 21.75-acre tract included the well, the irrigation equipment, and the blueberry patch.  As a result, Walker failed to conclusively establish that there was a mutual mistake of the parties that caused him to not file a motion for new trial or appeal.[15]

---

[15]Since Walker did not submit sufficient evidence to show there was no genuine issue of material fact as to his assertion of mutual mistake, Alvizo was not obligated to present evidence raising a fact issue.  That said, Alvizo submitted evidence raising a fact issue as to mutual mistake.  In her affidavit, she affirmatively stated that she had always intended to receive the 51-acre tract as described in the metes and bounds descriptions contained in her father's inventory and in the 2018 Judgment, that she relied on the boundary line between the 21.75-acre tract and the 51-acre tract as described in the prior deeds and the Inventory, and that there was no misunderstanding about the boundary line and the well.  She also submitted the deeds and the Inventory that contained metes and bounds descriptions of the 21.75-acre tract and the 51-acre tract that are identical to the metes and bounds descriptions of those tracts contained in the 2018 Judgment. Alvizo also submitted a copy of Walker's original petition filed in the prior declaratory judgment action that set forth a metes and bounds description of the 51-acre tract identical to that contained in the 2018 Judgment and in which Walker alleged that Harold inherited the tract from his parents and that Harold's Will provided that Alvizo would inherit the tract in fee simple, subject to Oleta's life estate.  The petition also set forth a metes and bounds description of the 21.75-acre tract identical to that contained in the 2018 Judgment. Even if Walker had presented sufficient summary judgment evidence, we find that Alvizo's summary judgment evidence was sufficient to show that there was a genuine issue of material fact as to whether both parties were acting under the same misunderstanding regarding whether the 2018 Judgment's metes and bounds description of the 21.75-acre tract included the well, the irrigation equipment, and the blueberry patch.

14

**B.      Walker Did Not Establish His Own Lack of Fault or Negligence**

To obtain a bill of review, the "defendant ha[s] the burden of showing that its failure to file a motion for new trial or appeal was not due to any fault or negligence on the part of defendant or its counsel." *Petro-Chem. Transp.*, 514 S.W.2d at 246. For that reason, Walker needed to establish as a matter of law that his failure to file a motion for new trial or appeal was not caused by any fault or negligence on his part or on the part of his counsel. In this regard, Walker is "charged with knowledge of all facts which could have been discovered and obtained by due diligence at the time of the former trial." *Morris*, 457 S.W.2d at 655. Walker argues that he had no way of knowing that the metes and bounds description contained in the Homeplace Deed did not include the blueberry patch, the well, and the irrigation equipment and that he could not have reasonably discovered the mistake within the time to perfect an appeal.

It is undisputed that the survey that revealed the alleged mistake was not performed until after the time for any appeal had expired. Walker submitted no summary judgment evidence that showed he was prevented from obtaining a survey either before the 2018 Judgment was entered or within the time period to appeal that judgment. To the contrary, the 2018 Judgment provided that surveys of the various tracts were authorized to be performed upon its entry.[16] Although Walker contends that it would have been imprudent to obtain the survey before the time for appeals had lapsed, the summary judgment evidence establishes that, at minimum, there is a fact issue as to whether Walker was diligent in discovering the alleged mistake.

---

[16]The 2018 Judgment, which was entered on September 17, 2018, provided, "Underwood surveying (or other surveyor if mutually agreed in writing by the parties), after August 31st, has full permission to enter upon the property and conduct and complete any necessary surveys to effectuate the divisions previously agreed and ruled upon."

The summary judgment evidence showed that the 21.75-acre tract and the 51-acre tract were originally purchased by Harold's father as a 72.45-acre tract in the 1943 Deed. Harold and Oleta acquired the 21.75-acre tract from Harold's father in the Homeplace Deed, and Harold inherited the 51-acre tract as his separate property upon his father's death. The evidence also showed that Harold's Will devised Alvizo an "approximately 45 acre tract," which the parties understood referred to the separate property Harold inherited from his father, and the Will devised Walker an "approximately 27 acre tract" that included the homeplace and other appurtenances. Further, in his brief, Walker asserts that there was a fence row dividing those two tracts that was long assumed to be the boundary between the two tracts and that the fence row placed the well and the irrigation equipment on Walker's tract.

Walker argues that, because of the location of the fence row, the devises by Harold, and the language in Oleta's Trust Agreement quoted above, the parties had long believed and operated under the assumption that the metes and bounds description contained in the Homeplace Deed was consistent with the location of the fence row and that there was no reason to think otherwise. Still, there was an approximately 6-acre difference between the acreage recited in the Homeplace Deed and the acreage recited in Harold's Will for this tract, as well as between the 51-acre tract Harold inherited from his father and the recited 45 acres in Harold's Will for this tract. Yet, the acreage for three other tracts recited in Harold's Will were almost exactly the acreage of those tracts, as described in the Inventory.

Considering the discrepancy between the acreage recited in the Homeplace Deed and the acreage recited in Harold's Will for this tract, we find that this evidence raised a genuine issue of

16

material fact as to whether Walker was diligent in discovering whether the metes and bounds description contained in the Homeplace Deed (and the 2018 Judgment) for the 21.75-acre tract included the blueberry patch, the well, and the irrigation equipment. In addition, because the 2018 Judgment authorized the immediate survey of the tracts, and Walker submitted no evidence that showed he was prevented from obtaining a survey prior to the time for appeal of that judgment expired, we find that there was a genuine issue of material fact as to whether Walker's failure to file a motion for new trial or appeal was caused by his negligence.

## V. Conclusion

Because Walker did not establish as a matter of law that there was a mutual mistake regarding the metes and bounds description of the 21.75-acre tract set forth in the 2018 Judgment, and because there remains a genuine issue of material fact as to whether he was diligent in discovering any alleged mistake and whether his failure to file a motion for new trial or appeal of the 2018 Judgment was caused by his own negligence, we find that Walker has not shown that he was entitled to a bill of review as a matter of law. As a result, we reverse the trial court's summary judgment and remand this case to the trial court for further proceedings.

Scott E. Stevens
Justice

Date Submitted        March 19, 2021
Date Decided:         May 3, 2021

17