TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00068-CV







In the Matter of M. P. A.








FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 183,451-C, HONORABLE EDWARD JOHNSON, JUDGE PRESIDING






 On October 13, 1999, appellant M.P.A., a juvenile at the time, was adjudicated
delinquent on two counts of aggravated sexual assault of a child. The juvenile court sentenced him
to a determinate sentence of twenty years and remanded him to the custody of the Texas Youth
Commission. This Court affirmed the adjudication on November 30, 2000. In re M.P.A., No. 03-00-00211-CV (Tex. App.--Austin Nov. 30, 2000, no pet.) (not designated for publication). Claiming
to have discovered new, expansive, and convincing evidence, unavailable at the time of the
adjudication trial, that establishes appellant's innocence beyond a reasonable doubt, appellant filed
with the trial court a petition for bill of review. Following a bench trial, the trial court denied
appellant's bill of review. By twelve issues, appellant challenges the trial court's judgment denying
the bill of review. We hold that M.P.A. has not met the requirements to obtain relief by bill of
review.


BILLS OF REVIEW

 A bill of review is an equitable proceeding by a party to a former action who seeks
to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. 
Wembley Inv. Co. v. Herrera, 11 S.W.3d 924, 926-27 (Tex. 1999). A bill-of-review plaintiff must
prove three elements: (1) a meritorious defense to the cause of action alleged to support the
judgment, or a meritorious claim, (2) which he or she was prevented from making by the fraud,
accident, or wrongful act of the opposing party or by official mistake, which is (3) unmixed with the
fault or negligence of the plaintiff. Hanks v. Rosser, 378 S.W.2d 31, 34-35 (Tex. 1964); Alexander
v. Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950). Bill-of-review relief is available only if a party has
exercised due diligence in pursuing all adequate legal remedies. Herrera, 11 S.W.3d at 927. If legal
remedies were available but ignored, relief by bill of review is unavailable. Id. Although a bill of
review is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify
relief by bill of review. Id.

 The procedure for conducting a bill-of-review proceeding is set out in Baker v.
Goldsmith, 582 S.W.2d 404 (Tex. 1979). First, the bill-of-review plaintiff must file a petition
alleging with particularity the facts establishing the three elements of a bill of review. Id. at 408. 
The plaintiff must then present, as a pretrial matter, prima facie proof to support the meritorious
defense alleged in the petition. Id. 408-09. If the court determines that the plaintiff has presented
a prima facie meritorious defense, the court may then conduct a trial, during which the plaintiff must
prove, by a preponderance of the evidence: (1) whether the he was prevented from asserting the
meritorious defense due to fraud, accident, or wrongful conduct by the opposing party or by official
mistake (2) unmixed with the fault or negligence of the plaintiff. Id. If the plaintiff satisfies this
burden, the underlying controversy between the parties is retried. Id. The district court may try these
remaining two elements in conjunction with the retrial of the underlying case or may conduct a
separate trial on the elements. Id.; Martin v. Martin, 840 S.W.2d 586, 591 (Tex. App.--Tyler 1992,
writ denied). The plaintiff may demand a jury trial on the two remaining elements. Martin, 840
S.W.2d at 592.


BACKGROUND

 The State alleged in two counts that on or about May 1, 1997, appellant, who was
fourteen at the time, committed aggravated sexual assault of S.A., his seven-year-old cousin. 
Appellant's brother was accused of similar conduct involving the same victim; he, however, pleaded
true to the allegations, received a five-year determinate sentence, and was not a part of appellant's
trial. S.A. testified at appellant's trial and was subjected to cross-examination by appellant's
counsel. Her testimony was consistent with the allegations made against appellant. Following the
trial, the jury found that appellant had committed aggravated sexual assault and affixed punishment
at twenty years. Appellant appealed the judgment to this Court, and we affirmed.

 Subsequently, appellant filed a petition for bill of review in the trial court, based on
"expansive, striking, persuasive and convincing epiphany of new evidence." This evidence,
according to appellant, consisted of the complaining witness's recantation of her previous
allegations, along with other evidence suggesting that S.A. was influenced by her mother when she
accused appellant of aggravated sexual assault. The trial court conducted an evidentiary hearing,
providing appellant with an opportunity to present prima facie proof of a meritorious defense. 
During this hearing, S.A. testified that appellant had never "molested" her and that she had testified
otherwise only because her mother put her up to it. At the conclusion of this hearing, the trial court
determined that appellant had presented prima facie evidence of a meritorious defense and proceeded
to conduct a full trial on the merits of appellant's bill of review.

 During the trial, appellant presented evidence and testimony from a number of
witnesses, many of whom had testified during appellant's initial adjudication trial. Throughout the
trial, appellant maintained his theory that S.A. had accused him of sexual assault because her mother
had put her up to it. Appellant posited that S.A.'s parents were going through a divorce, and S.A.'s
mother convinced S.A. to fabricate the allegations against appellant in order to gain an advantage
in pending custody proceedings. Following a trial to the court, the court denied appellant's bill of
review. The court filed findings of fact and conclusions of law, in which it found that S.A. was
subjected to manipulation by both her mother and her father, and concluded that appellant had failed
to sustain his burden of establishing that the State's extrinsic fraud prevented appellant from
asserting his meritorious defense. This appeal followed.


DISCUSSION

Third Amended Petition

 By his first issue, appellant asserts that the trial court erred in refusing to consider his
third amended petition. Appellant filed his second amended petition for bill of review and
application for writ of habeas corpus on July 20, 2001; appellant, however, informed the trial court
that he had no intention of pursuing the writ of habeas corpus, and that he had inadvertently kept it
in the heading. The trial court held a hearing on appellant's second amended petition on July 31 and
August 1. The proceedings were then postponed until October 31. In the interim, appellant filed a
third amended petition for bill of review on August 29. This third amended petition removed the
writ of habeas corpus language from the title of the pleading. It also added that S.A. had testified
in open court that she was not assaulted by appellant and that S.A. and her mother had committed
extrinsic or intrinsic fraud by lying to the police and lying at appellant's adjudication trial. The trial
court struck appellant's third amended petition as being filed untimely.

 Rule 63 of the Texas Rules of Civil Procedure provides that parties may amend their
pleadings, provided that pleadings offered for filing within seven days of the date of trial or
thereafter, "shall be filed only after leave of the judge is obtained, which leave shall be granted by
the judge unless there is a showing that such filing will operate as a surprise to the opposite party." 
Tex. R. Civ. P. 63. And rule 66 allows parties to amend their pleadings during a trial if "the
presentation of the merits of the action will be subserved thereby and the objecting party fails to
satisfy the court that the allowance of such amendment would prejudice him in maintaining his
action or defense upon the merits." Tex. R. Civ. P. 66. An amendment may be allowed even after
the verdict but before judgment. Chambless v. Barry Robinson Farm Supply, Inc., 667 S.W.2d 598,
601 (Tex. App.--Dallas 1984, writ ref'd n.r.e.). Appellant argues that his third amended petition
did not surprise or prejudice the State. 

 The party complaining of the trial court's refusal to consider an amended pleading
has the burden to show an abuse of discretion. European Crossroads' Shopping Ctr., Ltd. v.
Criswell, 910 S.W.2d 45, 53 (Tex. App.--Dallas 1995, writ denied) (citing Hardin v. Hardin, 597
S.W.2d 347, 349 (Tex. 1980); Clade v. Larsen, 838 S.W.2d 277, 280 (Tex. App.--Dallas 1992, writ
denied)). We will not disturb the trial court's ruling unless the complaining party shows an abuse
of discretion. Id. (citing Hardin, 597 S.W.2d at 349-50; Clade, 838 S.W.2d at 280). 

 Parties may amend their pleadings only with the trial court's permission within seven
days of a trial date or afterward. Tex. R. Civ. P. 63. The trial court has no discretion to refuse an
amended pleading unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the
amendment presents a substantive change that would alter the nature of the trial and is thus
prejudicial on its face. Chapin & Chapin, Inc. v. Texas Sand & Gravel Co., 844 S.W.2d 664, 665
(Tex. 1992) (quoting Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990)). 

 The trial court stated that it was striking appellant's third amended petition because
it was untimely filed. Because an amendment to a pleading may be allowed even after the verdict,
we conclude it was error for the trial court to strike the third amended petition on this basis. See
Chambless, 667 S.W.2d at 601. Moreover, because the State offered no showing of surprise or
prejudice, the trial court had no discretion to refuse the amended pleading on this basis either.

 Our review of the record, however, also reveals that appellant failed to request leave
of the trial court before filing his third amended petition, after the hearing on the bill of review had
already begun. A trial court does not abuse its discretion in striking an amended petition that is filed
without leave of court. Forest Lane Porsche Audi Assocs. v. G & K Servs., Inc., 717 S.W.2d 470,
473 (Tex. App.--Fort Worth 1986, no writ). 

 Even if appellant had sought leave of the court before filing his third amended
petition, appellant has shown no harm as a result of the trial court's refusal to consider the third
amended petition. See Tex. R. App. P. 44.1(a); Chambless, 667 S.W.2d at 601. Through his third
amended pleading, appellant sought to delete the writ of habeas corpus language from the heading,
but appellant had already informed the court that he was abandoning the writ action, and the trial
court had acquiesced. Furthermore, as appellant concedes, his third amended petition added only
an additional manner and means by which fraud was committed--S.A. and her mother lied to the
police about the sexual assault allegations against appellant and S.A. lied during appellant's
adjudication trial. Although the trial court struck the amended pleading, the trial court heard S.A.
testify that she had lied to the police about appellant sexually assaulting her and had lied during his
adjudication trial. And although S.A.'s mother was not a witness during the bill of review trial,
evidence of her dishonesty was before the court. Indeed, in its findings of fact and conclusions of
law, the trial court found that S.A. had been manipulated by her mother. Nevertheless, the trial court
concluded that appellant failed to establish that the State committed extrinsic fraud, which prevented
appellant from asserting his meritorious defense during his adjudication trial. We conclude that if
the trial court erred in striking appellant's third amended petition, appellant has failed to show how
this error probably caused the rendition of an improper judgment. Appellant's first issue is
overruled.


Motion for Discovery

 By his second issue, appellant argues that the trial court committed error by ruling
that a discovery order requiring the State to disclose witnesses applied only if the bill of review were
granted and the petition for delinquent conduct (the underlying case) were retried, but did not apply
to the preliminary portion of the bill of review proceedings. Appellant filed a motion for discovery
in his bill of review action on March 6, 2000, requesting among other things, a "list of the names and
addresses of all witnesses the prosecution intends to call at trial." The trial court held a pretrial
hearing on the discovery motion on July 19, 2001. During the hearing, the State objected to
appellant's request. Initially, the court appeared confused as to which witnesses appellant was
requesting be disclosed. The court inquired as to whether appellant sought a list of witnesses the
State intended to call during a retrial of the underlying juvenile case should the bill of review be
granted, or whether appellant sought a list of all witnesses the State intended to call during the entire
bill of review proceeding. Appellant answered that he requested a list of all witnesses that the State
intended to call both during the bill of review portion of the proceeding and the retrial of the juvenile
case should the bill of review be granted. The court then ruled: "All right, [the State's] objections's
[sic] denied. You're granted the list of witnesses." 

 Later, after appellant presented prima facie evidence of his meritorious defense, the
State asked the court for leave to present rebuttal evidence. Appellant objected, arguing that a bill
of review defendant is not allowed to present rebuttal evidence during the meritorious defense
portion of the bill of review proceeding and furthermore that the State failed to identify any
witnesses that it intended to call during the bill of review proceeding. The trial court apparently
failed to remember its prior ruling and responded to appellant's objections as follows: "No, sir. You
continue to mischaracterize what The Court has ordered [the State] to do, Mr. Lavin. Your Motion
for Discovery asked for a list of witnesses at the trial of this case. You did not say at the bill of
review. And as I understand it, [the State] provided you with a list of witnesses that he would
anticipate that he would have to recall if this case was re-tried." The trial court nevertheless denied
the State's request to present rebuttal evidence and found that appellant made a prima facie showing
of a meritorious defense.

 Afterwards, when the trial court was attempting to gauge the amount of time needed
by the parties to conduct the bill of review trial, the State informed the court that it intended to call
three witnesses during the presentation of its defense. Appellant once again objected based on the
State's failure to list any witnesses. The trial court again recollected that it had ruled that the State
only had to provide a witness list if the bill of review were granted and the underlying juvenile case
were retried. The court explained that appellant's request for discovery was not very specific, and
that it was "not going to penalize, did not, have not and will not penalize The State for the lack of
specificity in your request for discovery."

 Later, after appellant concluded his presentation of evidence during the bill of review
proceeding, the State called two witnesses. Appellant reurged his objection to the State presenting
any witnesses because it had failed to list them in response to discovery requests. The trial court
overruled appellant's objection, again stating that its understanding of its prior ruling was that the
State would only have to provide a list of witnesses it intended to call during the retrial of the
juvenile case should the bill of review be granted. The State then called two witnesses.

 Under Texas Rule of Civil Procedure 193.6, if a party fails to make a discovery
response in a timely manner, that party may not introduce in evidence the information that was not
disclosed or offer the testimony of a witness who was not properly identified. Tex. R. Civ. P. 193.6. 
The sanction is automatic. See Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 395 (Tex. 1989). 
The exception is when the party seeking to introduce the evidence shows good cause for the failure
to timely respond and that the failure to timely respond will not unfairly surprise or prejudice the
other party. Tex. R. Civ. P. 193.6. Determination of good cause is within the sound discretion of
the trial court. Morrow v. H.E.B., Inc., 714 S.W.2d 297, 297-98 (Tex.1986). The test for abuse of
discretion is whether the trial court acted without reference to any guiding rules and principles, or
equivalently, whether under all the circumstances of the particular case the trial court's action was
arbitrary or unreasonable. Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990); Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 The record reflects that the trial court ordered the State to produce a list of all
witnesses it intended to call during the entire bill of review proceeding and did not limit the list to
those witnesses that would be called only during a retrial of the juvenile case. There is no indication
in the record that the State attempted to show good cause for its failure to respond to the discovery
request. Thus, the trial court erred in admitting the testimony of the undisclosed witnesses.

 When a trial court errs by allowing the testimony of an undisclosed witness without
a showing of good cause, we must determine whether the trial court's action constituted reversible
error. Tex. R. App. P. 44.1; Gee, 765 S.W.2d at 396. To obtain reversal of a judgment based upon
error of the trial court in admitting or excluding evidence, appellant must show that (1) the trial court
did in fact commit error, and (2) the error was reasonably calculated to cause and probably did cause
rendition of an improper judgment. Tex. R. App. P. 44.1; Gee, 765 S.W.2d at 396. The erroneous
admission of testimony that is merely cumulative of other testimony and is not controlling on a
material issue dispositive of the case is harmless error. Gee, 765 S.W.2d at 396. We will review
the entire record to determine whether the judgment was controlled by the testimony that should have
been excluded. Id.

 While the failure to designate witnesses can undoubtedly prejudice a party, for
example when there are a great number of possible witnesses, the State in this case called only two
witnesses. The first of those two witnesses was Erika Jordan, a police officer with the City of Harker
Heights. Officer Jordan was the investigating officer in the underlying juvenile case against
appellant. Through this witness, the State offered and the trial court admitted the written confession
of appellant's brother, who admitted to the delinquent conduct for which he was charged. It appears
from the record that appellant had intended to call Officer Jordan as a witness during his case in
chief, but chose not to. Officer Jordan's testimony neither confirmed nor disputed the existence of
extrinsic fraud that prevented appellant from asserting his meritorious defense. Ultimately, it was
appellant's failure to establish extrinsic fraud that resulted in the trial court's denial of his bill of
review. Because Officer Jordan's testimony was not controlling on this material issue, which was
dispositive of the case, we conclude that the erroneous admission of her testimony was harmless. 

 The second witness called by the State was Loretta Lewis Matthews, an evidence
researcher hired by S.A.'s father. It appears from the record that appellant intended to call Matthews
as a witness during his case in chief as well, but chose not to. Matthews administered a "scan
questionnaire" to S.A. in an effort to determine S.A.'s truthfulness regarding the sexual assault
allegations she made against appellant. It was after the administration of this scan questionnaire that
S.A. first confided that she had lied about the sexual assault allegations. Before Matthews was called
to testify on behalf of the State, S.A.'s father, Stephen Arena, had already testified without objection
about this exact same evidence when he was cross-examined by the State. Improper admission of
evidence does not constitute reversible error when the same evidence is already in the record. 
Because Matthews's testimony was merely cumulative of other evidence in the record, we hold the
trial court's erroneous admission of her testimony constituted harmless error. We overrule
appellant's second issue.


Arlene Stoddard's Testimony

 By his third issue, appellant claims the trial court committed error by sustaining a
hearsay objection to the testimony of a licensed professional counselor concerning S.A.'s statements
to the counselor refuting a sexual assault allegation. Appellant called Arlene Stoddard, a licensed
professional counselor, to testify about her counseling of S.A.. When appellant asked, "Did [S.A.]
tell you anything about her mom, as it relates to her testimony," the State objected based on hearsay. 
The trial court sustained the objection.

 When appellant again attempted to elicit the same information from the witness, the
trial court sustained an objection based on privilege. In response, appellant recalled S.A. to the
witness stand, and S.A. waived any testimonial privilege. The State then withdrew its assertion of
privilege, and appellant again asked Stoddard: "Can you tell The Court, . . . what it is that [S.A.] told
you about her mom--her mom's involvement in her testimony?" The State once again raised a
hearsay objection, which the trial court sustained. Appellant then perfected a bill of exception,
during which Stoddard testified: "[S.A.] said that her mother influenced her in what she said about
the abuse." Appellant claims this statement fell within two exceptions to the hearsay rule: it was a
statement for medical diagnosis or treatment, see Tex. R. Evid. 803(4), and it was a statement made
against interest, see id. 803(24).

 This Court has recognized that a child's statements to a physician or other health care
professional describing sexually abusive acts or the abuser can be admissible under the medical
diagnosis or treatment exception. Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.--Austin 1991,
pet. ref'd); see also Moore v. State, 82 S.W.3d 399, 403-05 (Tex. App.--Austin 2002, pet. ref'd). 
Appellant has not established that Stockard is a physician or other health care professional, or that
the excluded out-of-court statement satisfies the pertinency requirement. United States v. Renville,
779 F. 2d 430, 436 (8th Cir. 1985) ("[T]he content of the statement must be such as is reasonably
relied on by a physician in treatment or diagnosis."). The medical diagnosis or treatment exception
does not encompass every statement made by a child victim of sexual abuse to a therapist, or support
the blanket conclusion that all statements made to a therapist by a victim of sexual abuse are
admissible as having been made for the purposes of treatment. Jones v. State, No. 03-02-00022-CR,
slip op. at __, 2002 Tex. App. LEXIS 8545, at *9-10 (Tex. App.--Austin December 5, 2002, no pet.
h.); Moore, 82 S.W.3d at 413 (Patterson, J., concurring).

 Likewise, appellant has not established that the statement was sufficiently against his
interest to qualify for the exception provided by rule 803(24). That rule creates an exception to the
hearsay rule for a statement that at the time of its making so far tended to subject the declarant to
civil or criminal liability that a reasonable person in the declarant's position would not have made
the statement unless she believed it to be true. Tex. R. Evid. 803(24). All hearsay exceptions require
a showing of trustworthiness. Robinson v. Harkins & Co., 711 S.W.2d 619, 621 (Tex. 1986). The
rule is founded on the principle that the ramifications of making a statement is so contrary to the
declarant's interest that she would not make the statement unless it were true. Id. Appellant
suggests that S.A.'s statements to Stoddard subjected her to criminal liability for perjury, thus
making the statement trustworthy. We disagree. According to Stoddard, S.A. stated that "her
mother influenced her in what she said about the abuse." This statement is not one that so far tended
to subject S.A. to criminal liability so as to render it trustworthy. She merely stated that she was
influenced by her mother, not that she lied while under oath. See Tex. Pen. Code Ann. § 37.02 (West
1994).

 Even if the proffered statement fell within an exception to the hearsay rule, any error
in excluding it would not be harmful because the same information had already been admitted into
evidence. Before Stoddard was called to the witness stand, S.A. herself had already testified that her
mother told her to lie at appellant's adjudication trial. Ordinarily this Court will not reverse a
judgment because a trial court erroneously excluded evidence that is cumulative of other evidence
admitted in the record. Texas Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000). We
overrule appellant's third issue. 


Report of Dr. Charles Pierce

 By his fourth issue, appellant argues that the trial court erred by refusing to admit a
psychological report on the basis of confidentiality/privilege. Dr. Charles Pierce, a psychologist,
testified on behalf of appellant. Dr. Pierce examined S.A.'s mother and prepared a report at the
direction of a Bell County trial court during the 1994 divorce and custody proceedings involving
S.A.'s mother. Appellant sought to introduce the report to demonstrate that S.A.'s mother had a
history of making false allegations of sexual misconduct in custody disputes. The State objected to
the introduction of the report based on relevance, hearsay, and privilege. The trial court sustained
the State's privilege assertion.

 Texas Rule of Evidence 510 addresses the confidentiality of mental health records. 
It defines a confidential communication as one that is


not intended to be disclosed to third persons other than those present to further the
interest of the patient in the diagnosis, examination, evaluation, or treatment, or those
reasonably necessary for the transmission of the communication, or those who are
participating in the diagnosis, examination, evaluation, or treatment under the
direction of the professional, including members of the patient's family.



Tex. R. Evid. 510(a)(4). The general rule of privilege provides that communications between a
patient and a professional or records of a patient maintained by a professional shall not be disclosed
during civil cases. Id. 510(b)(1). 

 The report was prepared for the 1994 divorce case and was included in that file. The
file had been sealed; however, the file could be viewed by other judges. (1) Appellant claimed he
obtained the report from the Department of Protective and Regulatory Services and not from the
sealed divorce file. Assuming that this report was not intended to be disclosed to third persons and
was indeed confidential, rule 510 provides that only two people may claim the confidentiality
privilege: (1) the patient or the patient's representative and (2) the professional, who may claim the
privilege on behalf of the patient. Id. 510(c). In this case, Dr. Pierce did not claim the privilege, and
the patient, S.A.'s mother, was not available to claim the privilege. The privilege was asserted by
the State. It appears that the trial court erred in relying on the State's claim of privilege to deny
admission of Dr. Pierce's report.

 Notwithstanding the court's erroneous reliance on the State's claim of privilege, it
appears that the exclusion of the report was harmless. See Tex. R. App. P. 44.1. After the trial court
sustained the State's objection, appellant perfected a bill of exception containing the following
exchange between appellant's counsel and Dr. Pierce:


Q Now, it [the report] does indicate that Mrs. Arena [S.A.'s mother] accused
Danny Profett [Mrs. Arena's former husband] of sexual assault, is that correct?


A No.


Q Of some type of sexual misconduct.


A No.


Q Let me see it, sir.


A The only information that I had was that Mr. Profett had been accused of some
type of sexual misconduct. If I remember correctly, I did not know that that had
been--that that had originated with Mrs. Profett or Mrs. Arena, excuse me.


Q Page Three of the report says as far as you can tell, it's been reported to you as
having been officially dismissed as unsubstantiated, is that right?


A That entire sentence is "Allegations of sexual and/or physical abuse have been
made against Mr. Profett in the state of California, and though [sic] them as
having been resolved, officially resolved, that's unsubstantiated. I have no
formal knowledge of the allegations or their disposition."



According to Dr. Pierce's testimony, the report did not include the information for which appellant
sought its admission into evidence, that S.A.'s mother had accused her former husband of sexual
abuse. Moreover, according to Dr. Pierce, it is not clear from the report that the allegations of abuse,
wherever they came from, were false. The statements in the report are ambiguous; they appear to
indicate that the allegations had been resolved but the resolution was unsubstantiated. The beneficial
character this report may have had, if any, is minimal. Thus, we cannot say that the judgment turns
on this particular evidence, which was excluded. We hold that any error in excluding the report was
harmless. Appellant's fourth issue is overruled.


Copy of Divorce File

 By his fifth issue, appellant claims the trial court committed error by refusing to admit
a certified copy of a divorce file on the basis of relevance. Appellant offered into evidence a
certified copy of a district court file relating to a divorce action between S.A.'s parents. The divorce
had been filed before S.A.'s allegations of sexual assault. The State objected on the basis of
relevancy. Appellant argued to the trial court that the file would reflect that S.A.'s mother was
involved in a custody dispute with S.A.'s father at about the same time that S.A. accused appellant
of sexual misconduct. Appellant further alleged that S.A.'s mother was ordered to submit to a
psychological evaluation, but failed to do so. He argued that the timing of the custody dispute,
coupled with the order for a psychological evaluation, bore some relevance to S.A.'s allegations of
sexual misconduct by appellant. Appellant offered the file into evidence two more times during the
proceeding, and the trial court sustained the State's relevancy objection both times.

 Relevant evidence is evidence "having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less probable than it would
be without the evidence." Tex. R. Evid. 401. All relevant evidence is admissible unless prohibited
by the Constitution, statute, or rules. Id. 402. The trial court determines preliminary questions about
admitting or excluding evidence. Id. 104(a). To obtain reversal of a judgment based upon error of
the trial court in exclusion of evidence, the following must be shown: (1) that the trial court did in
fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause
rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995). A trial court has broad discretion in determining the admissibility of
evidence, and its ruling should not be reversed absent an abuse of discretion. Alvarado, 897 S.W.2d
at 753; Gee, 765 S.W.2d at 396. A trial court abuses its discretion when it acts without regard to any
guiding rules or principles. Downer, 701 S.W.2d at 241-42. Whether a trial court abused its
discretion in making an evidentiary ruling is a question of law. Jackson v. Van Winkle, 660 S.W.2d
807, 810 (Tex. 1983). 

 The file that appellant sought to admit into evidence did not include any allegation
of sexual assault or abuse against anyone. Its only relevance, according to appellant, was the fact
that S.A.'s parents were going through a divorce at about the same time that S.A. accused appellant
of molesting her. We cannot say that the trial court acted without regard to any guiding rules or
principles in deciding to exclude this evidence based on its lack of relevance to the bill of review
proceeding.

 Even if we were to agree that the file had some relevance to the bill of review
proceeding and the trial court erred in excluding it, appellant has not established that this error was
harmful. The fact that S.A.'s parents were divorcing when S.A. accused appellant had been
presented to the court. For example, appellant called Vicky O'Dell to testify during his case in chief. 
O'Dell was an acquaintance of both of S.A.'s parents. During direct examination of O'Dell,
appellant asked, without objection: "Do you know whether or not she [S.A.'s mother] was in the
process of getting a divorce at that time?" Over the State's objection, O'Dell testified that S.A.'s
mother told O'Dell that "her and Stevie were--Stephen, was getting divorced, getting separated, and
she was mad about that." The divorce file, therefore, was merely cumulative of other evidence in
the record, and any error in excluding it was harmless. Appellant's fifth issue is overruled.


Brother's Confession

 By his sixth issue, appellant argues that the trial court committed error by admitting
the contents of a court file involving his brother, including his brother's written confession and other
irrelevant hearsay evidence. After appellant rested, the State requested that the trial court take
judicial notice of the contents of the court file relating to appellant's brother who had pleaded true
to the allegation of aggravated sexual assault on S.A. and was committed to the Texas Youth
Commission. Appellant objected based on relevance; the trial court overruled appellant's objection
and took judicial notice of the file. In the file was a written statement by appellant's brother in which
he admitted to committing the offense, but denied that appellant was guilty of the same charge.

 Appellant's theory throughout the bill of review hearing was that S.A. fabricated the
sexual assault charge she made against appellant and his brother at the behest of her vindictive
mother, who sought to punish her former husband's family members and gain an advantage in a
custody dispute. Indeed, S.A. testified during the bill of review hearing that neither appellant nor
his brother ever hurt her. She testified that the reason she recanted her story was because "it's not
right that they're behind bars for something they didn't do."

 Relevant evidence is evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less probable that it would
be without the evidence. Tex. R. Evid. 401. The fact that appellant's brother confessed to having
sexually assaulted S.A. bears some relevance to whether S.A. fabricated the sexual assault
allegations made against appellant and his brother. We cannot say that the trial court's admission
of this evidence constituted an abuse of discretion. We therefore hold that the trial court did not err
in taking judicial notice of the file, and we overrule appellant's sixth issue.


Carolyn Martin's Report

 By his seventh issue, appellant claims the trial court committed error by excluding
testimony from witness Carolyn Martin and by threatening to choke appellant's counsel. (2) Carolyn
Martin is a child protective service worker employed by the Texas Department of Protective and
Regulatory Services. Through this witness, appellant offered into evidence Martin's summary
disposition report, and the trial court admitted it. Appellant then offered into evidence a report that
was identical to the one the trial court had already admitted, except that the second report included
handwritten notes on it. Appellant offered the second document, not "to prove the truth of the matter
asserted," but to show that there "is some question about the credibility of [the Department of
Protective and Regulatory Services'] record keeping because the record that they sent to us did not
have those specific notations." The State objected based on hearsay, and the trial court sustained the
objection. Later in the hearing, however, appellant reoffered the same document, and the trial court
admitted it without objection. Thus, any error alleged by appellant was rendered moot and harmless
when the trial court admitted the document into evidence. We overrule the seventh issue.


Judicial Misconduct

 By his eighth issue, appellant alleges that the trial court threatened appellant's counsel
using intimidating tactics and embarrassed appellant's counsel in open court. By his eleventh issue,
appellant alleges that the "trial court committed error by making rulings indicating a pattern that calls
into question the court's fairness and impartiality." (3) The portion of the record cited to us by
appellant reveals a disagreement between the trial court and appellant's counsel concerning the
manner in which appellant's counsel was questioning his witness, Martin. When appellant's counsel
offered the second document into evidence, the trial court sustained the State's hearsay objection. 
The disagreement ensued when appellant's counsel attempted to "prove up" the document, with the
court's permission:


Q All right. Do you notice the distinction between that paper and this paper
(indicating)?


A Yes.


Q And what is the distinction?


A The distinction is this (indicating) has notes at the bottom and this one
(indicating) does not.


Q Can you explain why there would be notes on a copy that my client had in his
possession and no notes on this one (indicating)?

(Emphasis added.) Before this exchange occurred, there had been no evidence that the document
at issue had been in appellant's possession. The trial court, apparently incensed by the reference to
facts not yet in evidence, scolded appellant's counsel: 


THE COURT: If you don't stay within the record in this trial I'm going to choke
you, instead of hold you in contempt. There is no evidence about
what your client has in his possession and you've just asked her
a question to testify under oath based upon supposedly something
that your client has in his possession. 

 

 Now, stay within the record, Mr. Lavin. Do you understand my
ruling? And do you understand my admonishment, yes or no?


MR. LAVIN: Yes, sir.


THE COURT: Last warning.


MR. LAVIN: Yes, sir.


Q [by Lavin] Would you please finish your answer, ma'am?


THE COURT: Mr. Lavin, your question is improper -


MR. LAVIN: I'll ask another one, judge.


THE COURT: -- because it was based on a premise of a fact that is outside the
record as it currently exists in this proceeding. Now, if you want
to rephrase your question or ask another question, do so.


MR. LAVIN: Yes, sir.


THE COURT: But I'm instructing this witness not to attempt to answer the
question that you just asked because The Court finds that it's an
improper question.



 Appellant's counsel continued questioning Martin about the distinction between the
two documents, and during the course of the questioning, the trial court became confused in
attempting to follow along:


 Q Let's start again, ma'am. Do you see a distinction between those
two pages?


A Yes, I do.


Q And do you have an explanation -- 


THE COURT: What two pages, Mr. Lavin?


MR. LAVIN: Judge, she understood my question.


THE COURT: I don't understand your question and I'm the one that has to make
the decision, Mr. Lavin.


MR. LAVIN: Yes, sir. The page that she's referring to in her document that
she's already identified and the document that I have marked as
Plaintiff's Exhibit 21. And I apologize if The Court didn't
understand the question. The witness did and I'm sorry.


THE COURT: Well, I'll tell you what, Mr. Lavin, since I'm the one that
ultimately has to make a decision, if I don't understand it it's not
going to do you much good if it comes into evidence, is it?


MR. LAVIN: Judge -- 


THE COURT: No, Mr. Lavin, I don't want any response from my remark. I just
want to know what you're talking about.


MR. LAVIN: Judge, you may have to hold me in contempt.


THE COURT: I'm fixing to.


MR. LAVIN: I'm a Christian and I'm a professional and I'm a gentleman and
I am going to continue to be a Christian and a professional and a
gentleman, no matter what you say.

 Now, I would like an opportunity to examine this witness in my
own way and if you don't like the way I'm doing it you can tell
me so, but there's no reason to be discourteous. I'm begging The
Court to please allow me to get this trial underway.


THE COURT: Mr. Lavin, if you'd like to stay within the rules we will proceed
much faster.


MR. LAVIN: Yes, sir. I am trying to stay in the rules, judge, and if I don't -- 


THE COURT: Well, you're not being very successful at it in my opinion.



 Appellant directs this Court to other similar exchanges in the record, in which
appellant's counsel and the trial court disagreed about the manner in which the evidence should be
presented. 

 To reverse a judgment on the ground of judicial misconduct, we must find judicial
impropriety, i.e., error coupled with probable prejudice to the complaining party. Silcott v. Oglesby,
721 S.W.2d 290, 293 (Tex. 1986); Erskine v. Baker, 22 S.W.3d 537, 539 (Tex. App.--El Paso 2000,
pet. denied); Pitt v. Bradford Farms, 843 S.W.2d 705, 706 (Tex. App.--Corpus Christi 1992, no
writ). The trial judge is responsible for the general conduct of the trial and has considerable
discretion in expressing himself while he controls the trial; however, he should refrain from verbally
confronting or displaying displeasure towards counsel. Food Source, Inc. v. Zurich Ins. Co., 751
S.W.2d 596, 600 (Tex. App.--Dallas 1988, writ denied). We examine the record as a whole to
determine whether the trial court's impropriety harmed appellant. Brown v. Russell, 703 S.W.2d
843, 847 (Tex. App.--Fort Worth 1986, no writ). 

 Our review of the record reveals that while it was inappropriate for the trial judge to
suggest that he would choke appellant's counsel if he failed to stay within the rules, the comment
was not prejudicial to the outcome of the trial. The threat to counsel was clearly ill-advised and
inappropriate. It apparently arose from the court's frustration because the trial judge was forced
repeatedly to admonish appellant's counsel to stay within the record. Nevertheless, the judge should
have restrained himself. While we do not sanction the judge's comments, because the trial judge
was the trier of fact in this case, it was not an abuse of discretion for him to ensure that he
understood the testimony and evidence that appellant's counsel was attempting to elicit.

 As further evidence of judicial misconduct, appellant directs this Court to two
separate exchanges between his counsel and the trial judge. In both instances, appellant's counsel
asked a witness a question that called for hearsay, and the court initially sustained the State's
objection. In both instances, appellant's counsel argued to the trial court that the testimony fell
within an exception to the hearsay rule, but would not disclose to the trial court which exception he
believed applied. Appellant's counsel argued, on both occasions, that the trial judge should first
listen to the proffered testimony, and then appellant's counsel would identify the appropriate hearsay
exception for the trial court to consider. In both instances, the trial judge suggested to appellant's
counsel that he identify the applicable hearsay exception first because the trial judge is "not required
to guess." Ultimately, the proffered testimony was admitted into evidence in both instances.

 These two instances do not exhibit judicial impropriety. Rather, they reflect the
manner in which appellant's counsel proceeded throughout the trial. The record reveals a number
of occasions in which the trial judge announced his ruling, and appellant's counsel continued to
reurge the same arguments; in doing so, he sometimes strayed from the record and injected facts not
yet in evidence. On those occasions, unlike the earlier threat to counsel, the court's admonishments
were appropriate and no stronger than necessary.

 Moreover, appellant has failed to show how he was prejudiced by the trial judge's
conduct. Throughout the bill of review proceeding, the trial judge appears to have made thoughtful
and impartial rulings and, in most instances, explained the reasoning behind his rulings to the parties. 
This was not a jury trial; the judge was the sole fact finder. The trial judge's comments were heard
only by the parties and their counsel. We overrule appellant's eighth issue.


Testimony of Loretta Lewis Matthews

 By his ninth issue, appellant combines numerous complaints regarding Loretta Lewis
Matthews's testimony. He alleges that the trial court committed error by admitting the testimony
of Loretta Lewis Matthews and by finding that she was not an "expert" (4) and that she was involved
in a conspiracy to manipulate S.A. into recanting her testimony. Appellant's issue is multifarious. 
If a court concludes that argument under an issue is multifarious, the court can refuse to review the
issue, or it may consider the arguments if it can determine, with reasonable certainty, the basis of the
alleged error. Shull v. United Parcel Serv., 4 S.W.3d 46, 51 (Tex. App.--San Antonio 1999, pet.
denied); Bell v. Texas Dep't of Crim. Justice-Inst'l Div., 962 S.W.2d 156, 157 n. 1 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied). 

 Moreover, although appellant included references to facts in the record, he failed to
cite any authority showing his burden of proof or the standard of review to be applied on appeal. 
Although courts generally construe the briefing rules liberally, an issue unsupported by citation to
authority presents nothing for this Court to review. Raitano v. Texas Dep't of Pub. Safety, 860
S.W.2d 549, 554 (Tex. App.--Houston [1st Dist.] 1993, writ denied); BLS Limousine Serv., Inc.
v. Buslease, Inc., 680 S.W.2d 543, 547 (Tex. App.--Dallas 1984, writ denied). This Court has no
duty to search for pertinent authority. Raitano, 860 S.W.2d at 554. Thus, appellant has waived the
alleged error. 


Extrinsic Fraud

 By his tenth issue, appellant contends the trial court committed error by concluding
that the fraud committed by S.A. and her mother constituted intrinsic fraud. The conclusion of law
about which appellant complains states: "S.A.'s recantation of her prior testimony, standing alone
and if now believed, constitutes 'intrinsic fraud' only." We review a trial court's conclusions of law
de novo. Anderson v. City of Sever Points, 806 S.W.2d 791, 794 (Tex. 1991); Black v. City of
Killeen, 78 S.W.3d 686, 691 (Tex. App.--Austin 2002, pet. denied). 

 In order to prevail on his bill of review, appellant had to establish (1) a meritorious
defense to the cause of action alleged to support the judgment, or a meritorious claim, (2) which he
was prevented from making by the fraud, accident, or wrongful act of the opposing party or by
official mistake, and (3) unmixed with the fault or negligence of the complainant. Hanks, 378
S.W.2d at 34-35; Alexander, 226 S.W.2d at 998. The opposing party in appellant's underlying
juvenile case was the State. Thus, appellant's burden was to establish that the State, as the opposing
party, committed the fraud that prevented appellant from asserting his meritorious defense. Whether
S.A. committed fraud is of no consequence.

 Appellant did not establish the existence of extrinsic fraud. Extrinsic fraud is fraud
that denies the party an opportunity to know about his rights or defenses or to present them at trial. 
Alexander, 226 S.W.2d at 1001. Intrinsic fraud, on the other hand, includes matters that were
actually presented to and considered by the trial court in rendering its judgment, such as perjured
testimony. Id. Thus, if S.A. committed fraud by fabricating the sexual assault allegations, the fraud
was intrinsic fraud. S.A.'s credibility was an issue before the court during the juvenile adjudication
trial. The trial court committed no error in concluding that S.A. had committed intrinsic fraud.

 By his final issue appellant urges a similar complaint, that the "trial court committed
error by denying appellant the relief of a new trial based on newly discovered evidence and sufficient
proof to sustain the bill of review." Appellant challenges the court's failure to find that the State's
fraud prevented him from asserting a meritorious defense: "That Plaintiff failed to prove that he was
prevented from making a meritorious defense at time of trial based upon any act, attributable to the
State, of fraud, accident, wrongful act or official mistake." The court's findings of fact are
reviewable for legal and factual sufficiency of the evidence to support them, under the same standard
we review jury findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In considering
legal sufficiency, we consider all of the evidence in the light most favorable to the prevailing party,
indulging every inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 285-86 (Tex. 1998). In reviewing factual sufficiency, we consider all of the
evidence and uphold the finding unless the evidence is too weak to support it or the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust. Westech Eng'g, Inc.
v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ).

 We need not review the trial court's findings of fact here because even if we were to
agree with appellant's argument and determine that S.A. had indeed lied about the sexual assault
allegations during appellant's juvenile adjudication trial, S.A.'s conduct constitutes intrinsic fraud
only, not extrinsic fraud. Moreover, S.A. was not the opposing party in the juvenile case, and so her
conduct is not relevant to establish appellant's right to bill of review relief. Appellant presented no
evidence indicating that the State had committed extrinsic fraud, which prevented him from asserting
his meritorious defense during the underlying juvenile adjudication trial. Accordingly, we hold that
the trial court did not err in denying appellant's bill of review, as appellant failed to produce
sufficient facts to sustain his bill of review burden. We overrule issues ten and twelve.


CONCLUSION

 Having overruled all of appellant's issues on appeal, we affirm the trial court's denial
of the bill of review.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed 

Filed: December 19, 2002

Do Not Publish

1. Later during the proceeding, appellant produced what he claims was an order unsealing the
file signed by the judge presiding over the 1994 divorce. Appellant, however, did not attempt to
reoffer Dr. Pierce's report.
2. We discuss the portion of appellant's seventh issue regarding the trial court's threat to
choke appellant's counsel under our discussion of appellant's eighth issue.
3. Appellant fails to cite any authority in support of his eleventh issue. Nevertheless, we will
consider it along with his eighth issue.
4. We note that neither appellant nor the State offered Matthews as an expert witness.