In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00170-CV
_____

KARLA FRANCO HERRERA, Appellant

V.

ARIEL ALEJANDRO MATA, Appellee

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 18-11-14838-CV

**MEMORANDUM OPINION**

Once a court's plenary power over its judgment expires, the court's judgment may not set aside unless the court grants a "bill of review for sufficient cause, filed within the time allowed by law[.]"[1] A bill of review is an equitable proceeding, in which a party may ask a court to set aside a judgment the party may no longer challenge through a motion for new

---

[1]Tex. R. Civ. P. 329b(f).

1

trial or through an appeal.[2] Ordinarily, a plaintiff who files a bill of review must "plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part."[3] But "[i]f legal remedies were available but ignored," the plaintiff is not entitled to relief in equity in a bill of review.[4]

After the divorce decree in Trial Court Cause Number 18-02-01586 filed by Ariel Alejandro Mata became final, Karla Franco Herrera filed a Bill of Review (Bill or Bill of Review) and sought to overturn the decree. The parties tried the issues presented in Karla's Bill to the bench.[5] Nine witnesses, including Karla and Ariel, testified during the seven-day trial. Following the trial, the trial court issued written findings of fact and conclusions of law. Among these, the trial court found that Karla "exercised her own free will" and was "not under duress when she settled"

---

[2] *WWLC Inv., L.P. v. Miraki,* 624 S.W.3d 796, 799 (Tex. 2021).
[3] *Id.* (cleaned up).
[4] *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 927 (Tex. 1999).
[5] Karla's Second Amended Bill of Review was her live pleading in the trial.

2

the issues involved in her divorce. As related to Karla's Bill, the trial court also found that Ariel "did not commit any fraudulent, accidental, or wrongful act th[at] prevented [Karla] from asserting any defense or claim" incident to their divorce. And the trial court found that "[m]uch of [Karla's] testimony [in the proceedings on Karla's Bill] was not credible." What's more, the trial court issued more than eighty findings of fact and fifteen conclusions of law to support its final judgment. The trial court ordered the parties to take nothing from each other on their claims and counterclaims when it entered the final judgment on Karla's Bill.

After the trial court rendered, Karla appealed. On appeal, Karla's attorney filed a brief raising a single issue, which asserts Karla's "due process and other rights were not adequately respected before she was deprived of her property and other constitutional rights." But we conclude Karla's arguments lack merit, so we will affirm for the reasons more fully explained below.

Karla's Issues (Restated)

Karla presents her issue broadly and in one issue. Yet her brief fails to provide the Court with points of error clearly identifying the errors she wants the Court to review. She compounds that problem further in her

3

brief by failing to provide the Court with appropriate citations to authorities and to the appellate record.[6]

That said, most of the complaints Karla has raised concern issues she could have pursued had she exercised due diligence in the case involving her divorce, as we explain below.[7] For instance, Karla complains here that she didn't receive prior notice of the final hearing the trial court conducted to approve the final decree in the divorce, a hearing where the trial court merely signed the agreed Final Decree, which Karla had signed as approved. Karla also complains that after the trial court approved the final decree, she wasn't notified of the fact the trial court had entered the decree. Together with these complaints, Karla also complains the trial court in handling her divorce violated her rights to due process when it failed to require the final decree and a mediated settlement agreement—all documents Karla signed—to be translated into Spanish from English because Karla's first language is Spanish.

In addition to the above complaints, which concern the case involving Karla's divorce, Karla also complains the trial court excluded

---

[6]*See* Tex. R. App. P. 38.1(f).
[7]*See Wembley Inv. Co.*, 11 S.W.3d at 927.

4

relevant evidence during the trial of the claims she raised in her Bill. Specifically, Karla argues the trial court erred in excluding her testimony about what Carlos, her son, told her that Ariel told him. The trial court excluded the testimony ruling it was hearsay.

Karla now claims her testimony about what Carlos told her Ariel said would have supported her claim that Ariel committed fraud in their divorce had her testimony been admitted in the trial. Last, Karla complains the greater weight and preponderance of the evidence supports a finding granting (rather than denying) her Bill of Review.

## Standard of Review

In Bill of Review proceedings, the petitioner "must open and assume the burden of proving that the judgment was rendered as the result of the fraud, accident or wrongful act of the opposite party or official mistake unmixed with any negligence of his own."[8] When, as here, parties have tried the case to the bench, the trial court is the sole judge of the credibility of the witnesses who have testified in the trial.[9] In a factual sufficiency review, the evidence is viewed in a neutral light, and

---

[8] *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979).
[9] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

the trial court's verdict will be set aside only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust.[10]

If the plaintiff can establish the requirements needed to prove the elements required to prevail on a Bill, the validity of a prior judgment that could not otherwise be challenged in a motion for new trial or through an appeal may be challenged by filing a Bill of Review.[11] Again, in a Bill of Review proceeding, the petitioner must ordinarily plead and prove (1) they have a meritorious claim or defense, (2) which they were prevented from making by the opposing party's fraud, accident, or wrongful act, (3) that is unmixed with fault or negligence of their own.[12]

We review the ruling of a lower court on a plaintiff's Bill of Review using an abuse-of-discretion standard, which occurs only when the trial court acts arbitrarily, unreasonably, or without reference to any guiding

---

[10]*See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

[11]*Miraki*, 624 S.W.3d at 799.

[12]*Id.*

6

rules or principles.[13] On questions of law, we review the trial court's ruling de novo.[14]

Even should the petitioner in a Bill of Review proceeding prove they have a meritorious defense to the underlying judgment, they must also prove they were prevented from asserting their defense to the underlying suit due to fraud, accident, or the wrongful act of the opposing party or an official mistake, unmixed with any fault or negligence of their own.[15] As to fraud, the Bill of Review plaintiff must prove the fraud was extrinsic to the underlying suit, in contrast to proving intrinsic fraud, which is fraud the Bill of Review plaintiff could have raised in the underlying suit.[16] The Texas Supreme Court explained the difference between intrinsic and extrinsic fraud as follows:

> 'Extrinsic fraud' is fraud which denied a party the opportunity to fully litigate upon the trial all the rights or defense [they were] entitled to assert. 'Intrinsic fraud,' by contrast, relates to the merits of the issues which were presented and presumably were or should have been settled in the former action. Within that term are included such matters as

---

[13] *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In the Estate of Curtis*, No. 09-14-00242-CV, 2015 Tex. App. LEXIS 9982, at *10 (Tex. App.—Beaumont Sept. 24, 2015, no pet.).

[14] *In the Estate of Curtis*, 2015 Tex. App. LEXIS 9982, at *10.

[15] *See Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004).

[16] *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989).

fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed. Such fraud will not support a bill of review, for each party must guard against adverse findings upon issues directly presented.[17]

Generally, the party with the burden of proof must direct their factual insufficiency complaints at specific findings on appeal rather than challenging the judgment as a whole.[18] On appeal, Karla didn't direct her challenges specifically at any of the trial court's findings of fact. To be fair, however, we understand that Karla's argument is that the trial court's finding that Ariel didn't commit any fraudulent act which prevented her from asserting a defense to the judgment in the parties' divorce is against the greater weight and preponderance admitted in the trial of her Bill of Review.[19] But as to findings Karla didn't challenge, the trial court's findings

---

[17]*Id.*

[18]*Tinnell v. Poulson Custom Homes, Inc.*, No. 09-06-390 CV, 2008 Tex. App. LEXIS 1594, at *6 (Tex. App.—Beaumont Mar. 6, 2008, pet. denied); *see also* 6 ROY W. MCDONALD & ELAIN GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 18:12 (2d ed. 1998).

[19]*See Williams v. Khalaf*, 82 S.W.2d 651, 658 (Tex. 1990) (noting that broader points of error should be construed "liberally to adjudicate justly, fairly and equitably the rights of the litigants"); *Cain*, 709 S.W.2d at 176 (noting the correct standard of review for challenges to the sufficiency of the evidence requires a court of appeals to consider and

occupy the same position and are entitled to the same weight as the verdict of a jury. They are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the findings.[20]

With these standards in mind, we discuss the facts leading to the parties' divorce as those facts are relevant to our review of the trial court's verdict on Karla's Bill and on our resolution of Karla's appeal.

Background

*The Underlying Divorce, Trial Court*
*Cause Number 18-02-01586*

We begin with the underlying divorce between Karla and Ariel in Trial Court Cause Number 18-02-01586. The record shows that in February 2018, Ariel sued Karla for divorce. Ariel alleged the parties had been married since 1997, had ceased living together, and that the marriage had become insupportable because of discord or a conflict of personalities that destroyed the legitimate ends of their marriage. In response to Ariel's suit, Karla answered and filed counterclaims. In her answer, Karla alleged that Ariel had "committed fraud on the community

weigh all the evidence and to set the verdict aside "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").
[20]*McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

9

estate." Among Karla's counterclaims, she alleged Ariel had "plotted and carried out a plan to actually defraud" her of her "separate and community estate." In another counterclaim, Karla alleged Ariel breached a fiduciary duty he owed her because he had her sign a document that was in English rather than Spanish, "which she believes divest[ed] her of her interest in their company GBA Group LLC," . . . a "multimillion dollar company holding millions in assets."

Even though both parties were represented by counsel, Karla and Ariel communicated with each other directly. Karla agreed to settle the disputed issues in the divorce even though she was advised not to do so by her attorney. For instance, on the night of July 4, 2018, after Karla and Ariel engaged in private negotiations without counsel, they signed a joint letter—the Letter Agreement—which they then sent jointly to their attorneys. The Letter Agreement outlines the essential terms on which Karla and Ariel agreed to settle the disputed issues in their divorce. The Letter Agreement contains several promises, for example Ariel agreed to pay Karla a lump sum of $50,000 upon the approval of the Final Decree by the court. He also agreed to pay Karla spousal support annually, in a specified amount, for a specific period of years. Even so, the parties

changed that amount weeks later, increasing the total payout in Karla's favor by around forty percent. In the Letter Agreement, the parties further agreed that neither party committed fraud. The Letter Agreement is typed, the record contains versions written in Spanish and English, and the one in Spanish contains what purports to be Ariel's and Karla's signatures.[21]

A day after Ariel and Karla signed the Letter Agreement, Karla left Ariel a message stating that even though her attorney had advised her she deserved more money, she wanted to move forward with their agreement and settle because getting more money was not worth the pain the proceedings were causing her son, Carlos, and the people she loves. That same day, Karla sent her attorneys a letter, in Spanish, notifying them she was terminating their attorney-client relationship. The letter states: "Mi decisión es irreversible."

Less than a week later, Karla's attorneys, by motion, asked the trial court for permission to withdraw. In the motion, the attorneys alleged that Karla had agreed to their request. And since Karla signed the order,

---

[21]The record includes a copy of the same letter, written in English. However, the signatures on that letter are illegible.

which acknowledges she approved the attorneys' withdrawal, the trial court granted the motion and allowed the attorneys to withdraw.

On July 27, 2018, Ariel's attorney sent Karla drafts of documents resolving Ariel's and Karla's divorce under terms to which they had agreed. Ariel's attorney sent the following documents to Karla for her review: (1) a draft Final Decree; (2) an LLC Agreement, which is related to an entity named Karla's Love LLC; (3) an Agreed Transfer of Property Held by Marlow V LP, which is an agreement transferring property owned by Ariel and Karla to Karla's Love LLC; and (4) a Special Warranty Deed with Vendors Lien on a home, which conveys GBA Group LLC's interest in certain property to Karla's Love LLC. When Ariel's attorney forwarded these documents to Karla, he told her a mediation in their divorce was tentatively scheduled for July 31, but that the mediation could be rescheduled depending on the mediator's availability on other days. Karla didn't ask to reschedule the mediation.

On the day before the mediation, Ariel's lawyer, by email, told the mediator he expected Karla to appear at the mediation pro se. He also sent the mediator a copy of the draft Final Decree. Ariel's attorney also told the mediator that Karla "was meeting with a lawyer [that] afternoon

at 3:00 to go over all of the Decree and closing documents before giving us her final approval." Karla consulted and discussed the settlement documents with a new attorney, whom she chose, on July 30, 2018.[22] The next day, Karla, Ariel, and Ariel's attorney attended a mediation. The mediation ended with Karla and Ariel signing the Mediated Settlement Agreement, an agreement resolving the issues in their divorce. Under the terms of the Mediated Settlement Agreement, Karla and Ariel agreed to sign four exhibits attached to the Mediated Settlement Agreement: (1) the Final Decree, (2) the LLC Agreement for Karla's Love LLC, (3) the Agreed Transfer of Interest of Property held by Marlow VP LP, and (4) the Special Warranty Deed with Vendors Lien. Additionally, the Mediated Settlement Agreement provides:

> . . . .
>
> **9. MEDIATED SETTLEMENT AGREEMENT: EACH PARTY INTENDS AND AGREES THAT EITHER PARTY SHALL BE ENTITLED TO JUDGMENT ON THIS AGREEMENT UNDER THE PROVISIONS OF**

---

[22]Karla denied that she actually met with an attorney about the draft documents before signing them even though she agreed she did schedule a meeting with one. Even so, the trial court found she did meet with an attorney of her own choosing before the mediation occurred and Karla did not challenge that finding in her appeal.

**SECTION 153.0071 OR SECTION 6.602 OF THE TEXAS FAMILY CODE.**

**10. EACH PARTY UNDERSANDS AND AGREES THAT THIS AGREEMENT IS NOT REVOCABLE.**

On July 31, 2018, Ariel and Karla signed the Mediated Settlement Agreement and the Final Decree.

On August 20, 2018, the trial court conducted a hearing to approve the Final Decree. Ariel appeared for the hearing with his attorney. Ariel's attorney announced the parties had settled the case, noting that the parties had both signed the Final Decree. Karla, however, did not attend the hearing. During the hearing the trial court signed the decree after learning that Karla and Ariel had both signed their names to the Final Decree.[23]

*The Bill of Review Proceeding and Trial in*
*Trial Court Cause Number 18-11-14838*

---

[23]We further note that because the Final Decree meets the requirements of Family Code section 6.602, the agreement bound the parties and gave Ariel the right to have a judgment on agreement "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Tex. Fam. Code Ann. § 6.602(a)(c). Unlike other settlement agreements, when parties sign an agreement subject to section 6.602, "the trial court is not required to determine if the property division is 'just and right' before approving the MSA." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012).

In November 2018, seeking to set aside the Final Decree signed by the 418th District Court in Trial Court Cause Number 18-02-01586, Karla filed a Bill of Review, which the Clerk assigned to the 418th District Court. In her Bill, Karla alleged that Ariel's fraudulent and wrongful acts prevented her from asserting meritorious claims she would have otherwise raised in her divorce. As previously noted, however, Karla alleged that Ariel committed fraud and had converted the parties' community property during the case involving their divorce. And in the divorce, Karla claimed that Ariel's fraudulent conduct caused her damages of over one million dollars. In her Bill, Karla claimed that before she signed the Mediated Settlement Agreement, Ariel threatened to have her jailed for adultery and to have her deported to Mexico her country of origin if she refused to settle in their divorce.

When Ariel answered, he filed a general denial. But he also denied that Karla was under duress when she signed the Final Decree, he denied he procured the Final Decree through duress or fraud, and he denied he prevented Karla from presenting a defense to the Final Decree. In

15

January 2020, the trial court called the case to trial. Nine witnesses (including Karla and Ariel) testified in the seven-day trial.

When the trial ended, the trial court found that Karla "failed to establish by a preponderance of the evidence that she was prevented from making any meritorious claim or defense because of any fraud, accident or wrongful act of [Ariel]." In addition to that finding, the trial court made eighty-four other findings of fact together with more than ten conclusions of law. We paraphrase the findings the trial court made as they relate to the issues on which Karla's appeal hinges, as follows:

- Karla and Ariel both signed the Final Decree in the mediation on July 31, 2018, evidencing their agreement to the terms of the divorce, both in form and in substance.
- Since before 2018, Karla could read, write, and speak basic English.
- Much of Karla's testimony was not credible.
- Ariel's testimony was significantly more credible than Karla's.
- Ariel did not force Karla to terminate her relationship with any attorney.
- Karla was not under duress and exercised her free will when settling the divorce.
- Ariel did not force Karla to settle the divorce.
- Ariel did not commit any fraudulent, accidental, or wrongful act that prevented Karla from asserting any defense or affirmative claim in their divorce.

After the trial court signed the judgment denying Karla relief in the proceeding on her Bill of Review, Karla appealed.

Standard of Review

*Analysis*

On appeal, Karla argues that in the case involving the parties' divorce, she wasn't provided with prior notice of the hearing to approve the Final Decree. Karla, however, presented that claim for the first time in her appeal. To preserve error, a party must make the trial court aware of the complaint in a timely manner and obtain a ruling.[24] Karla's Second Amended Petition for Bill of Review, her live pleading, doesn't include any claims alleging the trial court in the divorce proceeding failed to notify her of the hearing on the final decree. Besides that, nothing in the record shows that Karla wasn't given proper notice of the final hearing, which ended with the trial court in the divorce case approving the Final Decree. Karla also could have raised her lack of notice claim in a post-judgment motion in the case involving her divorce. Even so, we need not

---

[24]*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *see* Tex. R. App. P. 33.1.

review Karla's lack of notice claim because it was not properly preserved for our review in the appeal.[25]

Karla also complains that in the case involving her divorce, she wasn't properly notified of the fact the trial court entered the Final Decree. But like Karla's other lack of notice claim, Karla neither pleaded, proved, or obtained a ruling from the trial court on her claim she was not properly notified of the fact the Final Decree had been entered in her divorce. Add to that, one of Karl's exhibits admitted during the trial on her Bill shows the Montgomery County District Clerk sent Karla a letter in the case involving her underlying divorce of the fact that the trial court had signed the Final Decree the day it was entered. Because Karla neither pleaded nor obtained a ruling that she was not notified of the entry of the Final Decree in the Bill of Review proceeding, she failed to properly preserve her complaint alleging she wasn't properly notified of the entry of the Final Decree for the purpose of her appeal.[26]

Karla also complains the trial court violated her rights to due process by failing to require the documents she signed in the mediation

[25]Tex. R. App. P. 33.1, 33.2.
[26]*Id.*

18

to be translated from English into Spanish, her first language. But Karla failed to prove that when she was in the trial court in the Bill of Review proceeding that she asked the trial court handling her divorce to have the settlement documents translated from English into Spanish before the mediation occurred. Without securing a ruling from the trial court denying her request to have the documents translated before she signed them, Karla is not entitled to collaterally attack the judgment in her divorce on a claim she could have but failed to raise in the trial court in a Bill of Review.[27]

Next, Karla complains the trial court erred in excluding her testimony about what she claimed her son, Carlos, told her that Ariel told him. The trial court sustained Ariel's objection to Karla's testimony about what Carlos told her Ariel told him as hearsay. On appeal, Karla argues the trial court "artificially imposed" rulings in Ariel's favor excluding Karla's testimony, but she then never explains why the trial court abused its discretion in sustaining Ariel's objection. She also doesn't cite cases to support her argument that the testimony should have been admitted. To

---

[27]*Tice,* 767 S.W.2d at 702.

19

top that off, Karla offers no argument to explain how the trial court's exclusion of Karla's testimony about what she claims Carlos told her was harmful in the context of a seven-day trial, a trial in which the trial court found Karla not credible, a finding she never challenged.

Her argument claiming the trial court abused its discretion in refusing to admit her testimony is also without merit. Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible.[28] At trial, Karla argued that her statement about what Carlos told her Ariel told him was admissible under Rule 803(24).[29] Under the exception Karla relies on here, a trial court may admit a hearsay statement that a reasonable person in the declarant's position would have made only if [the declarant] believed it to be true because when it was made it was so contrary to [the declarant's] pecuniary or proprietary interest that it had a great tendency to invalidate [the declarant's] claim or expose [the declarant] to civil or criminal liability or make [the declarant] an object of hatred, ridicule or disgrace.[30] Yet "[a]ll

---

[28]Tex. R. Evid. 801, 802.
[29]Tex. R. Evid. 801(24).
[30]*Id.*

20

hearsay exceptions require a showing of trustworthiness."[31] And as the party who was seeking to have the hearsay declaration of a witness admitted as an exception to the general rule, Karla had the burden to show the evidence was within the exception she relied on in the trial.[32] Given the trial court's finding that most of Karla's testimony was not credible, we conclude the trial court did not abuse its discretion in excluding Karla's testimony about what she claimed Carlos told her Ariel told him.

Last, we turn to Karla's claim that the greater weight and preponderance of the evidence supports a finding granting her Bill of Review. We conclude that when considered as a whole, the evidence supports the trial court's finding that Ariel did not commit any fraudulent, accidental, or wrongful act, which prevented Karla from asserting any defenses or affirmative claims in the parties' underlying divorce.

---

[31]*Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986).
[32]*See Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962).

In a bench trial, the trial court "may believe one witness and disbelieve others[.]"[33] Here, the trial court could reasonably have disbelieved Karla's testimony that Ariel falsely represented any facts material to the parties' property in their divorce, that he forced Karla to sign documents transferring her interest in property she owned to others when the documents themselves notified a person of what property they transferred. Here, the trial court rejected Karla's claim she didn't understand the documents because they are written in English and not Spanish. The trial court also found that Karla consulted with an attorney before she signed the documents relevant to her divorce, documents signed in a binding mediation that resulted in a settlement of the property dispute in the parties' divorce.

To be sure, Karla testified during the trial that Ariel made false representations that induced her to sign the documents in the mediation, threatened to have her jailed for adultery, threatened to have her deported, and that he made her terminate her attorney. But all that conduct occurred before Karla attended the mediation and signed the

---

[33] *McGalliard v. Kuhlmann*, 722 S.W.2d at 697.

22

Final Decree, so it was all conduct Karla could have (but didn't) bring up in the suit involving the parties' divorce. Besides, Karla admitted in the trial on the case involving her Bill that she signed the Mediated Settlement Agreement. And that Agreement states neither party committed fraud. Given the evidence before the court, the matters Karla complains about concern matters that relate to intrinsic rather than extrinsic fraud. For that reason, it was reasonable for the trial court to find that Karla's claims related to issues that she raised or with reasonable diligence could have raised in the parties' divorce.

The trial court also found the judgment in the divorce case was not rendered under circumstances that were unmixed with negligence of Karla's own.[34] We agree with the trial court that there is evidence in the record supporting that finding. For instance, the trial court heard testimony that Karla fired the attorneys she retained to represent her after those attorneys learned that Karla negotiated a settlement with Ariel on her own. The trial court heard testimony that Karla's attorney's told Karla after she signed the letter that they could get her more money

[34]*See Baker*, 582 S.W.2d at 409.

if she didn't settle. And Karla's attorneys, when they represented her, filed pleadings alleging Ariel committed fraud and converted property owned by the community estate.

As the factfinder, the trial court could reasonably have concluded that under the circumstances, Karla acted negligently by firing the attorneys and proceeding to represent herself against someone she alleged had engaged in fraud. Considering the record as a whole, we cannot say the trial court's verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust.

## Conclusion

We overrule Karla's issues. The trial court's judgment denying Karla's Bill of Review is

AFFIRMED.

        _____
        HOLLIS HORTON
        Justice

Submitted on April 18, 2022
Opinion Delivered November 17, 2022

Before Golemon, C.J., Horton and Johnson, JJ.